22544.   RADCLIFF v. THE STATE.

Argued June 9, 1964—Decided July 9, 1964.

*Harris, Chance, McCracken & Harrison, R. U. Hardin,* for plaintiff in error.

*George Hains, Solicitor General, H. Cliff Hatcher, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

Grice, Justice.   Convicted of murder with a recommendation, Bennett Radcliff assigns error upon the denial of his motion for new trial.   He was indicted by the grand jury of Burke County for the murder of his wife.   Following his trial in the superior court of that county he filed an amended motion for new trial which, in addition to the general grounds, urged two special grounds, predicated upon alleged improper argument by the solicitor general.

■   We first consider the general grounds to ascertain whether the verdict is supported by the evidence.   That which we regard as material follows.

There was testimony that the death of the defendant's wife was caused by bullet wounds in her head; that an empty pistol was found near her body; that several fired pistol shells were on

the floor nearby; that a number of bullet markings were visible in the wall behind where her body lay, some at her level; and that there were no powder burns on her.

A city policeman testified that shortly after the homicide the defendant told him, "I've done a terrible thing. I have killed my wife and shot myself," and that the defendant was wounded.

The sheriff testified that the morning after the homicide the defendant said that "he had played hell"; that he and his wife " 'got in an argument and I went out and got the pistol out of the car and brought it back and laid it upon the stove' "; and that "when he came out of the bathroom she shot him, and he took it away from her and killed her."

There were no eyewitnesses to the homicide and the physical facts are consistent with either malice or lack of malice. Therefore, these two statements of the defendant are highly significant in so far as the essential element of malice is concerned.

Ordinarily, "the law presumes every homicide to be malicious, until the contrary appears from circumstances of alleviation, of excuse, or justification, and . . . it is incumbent on the prisoner to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him." *Mann v. State*, 124 Ga. 760 (1) (53 SE 324, 4 LRA (NS) 934). However, the rule is also that "If the accused admits the killing with a deadly weapon, but adds an explanation which might negative malice, no presumption that the homicide was murder would arise on such admission; but if no explanation were added tending to reduce the grade of the homicide, that presumption would arise." *Futch v. State*, 90 Ga. 472 (8) (16 SE 102).

Under this rule, the statement to the sheriff, in which the defendant said that "he had played hell," and that his wife shot him and he took the pistol away from her and killed her, given a construction favorable to the defendant, might negative malice; hence no such presumption arises. But his other statement, to the policeman, that "I've done a terrible thing. I have killed my wife and shot myself," admits the killing but does not add an explanation of justification; hence the presumption of malice does arise.

The conflict between two statements of this nature calls for application of a further rule: "In the trial of one indicted for murder, where the evidence adduced to establish the homicide presents two conflicting theories of fact, one based upon circumstances indicating malice and the other upon warranted inferences which negative its existence, then it becomes a question of fact, to be decided by the jury, as to which one of these inconsistent theories is in accord with the real truth of the occurrence." *Mann v. State,* 124 Ga. 760 (1), supra.

In the evidentiary situation in the case at bar, the jury chose to accept the theory of malice from the defendant's statement to the policeman. Their verdict is amply supported by the evidence.

For the reasons stated, the trial court did not err in overruling the general grounds.

■ We turn now to the special grounds complaining of the trial court's failure on two occasions to declare a mistrial for alleged improper argument to the jury. No rebuke of counsel or instruction to the jury was given in either instance.

(a) On the first occasion the solicitor general said: "And there are some things that stand out here like a sore thumb; that are proved and there is no question or doubt about it. And here is what they admit—that he went out twice, out in the street, went to his car, went in the compartment. He got this deadly thing out of the compartment and brought it in the house and says he put it on the stove. B-a-n-g. Now His Honor is going to tell you this—and I hope His Honor will charge it. You cannot, in Georgia or any state, create an emergency, and after having created the emergency, take advantage of your own wrong initial act and use it for self-defense or otherwise. The minute he dared go out there and bring this thing out of the street and bring it in there and put it down that man created an emergency."

The defendant, in support of his motion, urged that such statement was unfair, was calculated to prejudice the jury and had no foundation of fact.

However, according to the testimony of the sheriff, the defendant stated to him that "I went out and got the pistol out of

the car and brought it back and laid it upon the stove . . ." and the sheriff on cross examination repeated that in substance and said that the defendant said "he had it in the glove compartment of the car." In his unsworn statement the defendant did not deny saying this to the sheriff.

Therefore, we regard this argument as not improper, but a legitimate inference from the evidence.

(b) On the second occasion the solicitor general, according to the approved recital of facts in this ground, stated to the jury: "Dr. Ward told you. Dr. Ward is the expert in this county and believe me during his tenure of office, Gentlemen, he has looked at many a one. Because Lord knows we have a lot of killings down here, with negroes especially. And he has looked at 'em. And he tells you that two of these wounds of entry here—I never saw a shot in my life—the undertaker says one went in here and the other one went in here."

Whereupon, the defendant's counsel moved for a mistrial and then and there insisted that the language "Because Lord knows we have had a lot of killings down here and we have to do something about it" was improper, highly inflammatory and prejudicial. However, since from the foregoing recital of fact in this ground it appears that the language complained of did *not* include the words "and we have to do something about it," the issue is as to the propriety of the statement "Because Lord knows we have had a lot of killings down here."

The witness referred to, Dr. Ward, had described the course of one of the bullets in the deceased's head. In response to the question "Do you make that statement to the jury because you have had ample experience as a coroner of this county in noticing how bullets enter and how they make their exit," he had answered "Quite a bit." Thus, the language complained of, "Because Lord knows we have had a lot of killings down here," related directly to this evidence as to the coroner's experience in making examinations of persons who had been shot. We regard what was said as a reasonable and proper deduction from the evidence. The language complained of was not a plea to convict this defendant on matters outside the record, but was based upon the evidence and tended to establish the credibility of the witness Ward's testimony.

We conclude that the trial judge did not abuse his discretion in denying the motion for mistrial on account of this argument.

Accordingly, in our view, these two grounds were properly overruled.

We find no error in the trial court's denial of the defendant's amended motion for new trial, and its judgment is therefore

*Affirmed. All the Justices concur.*