22707. WHEELER v. THE STATE.

536

ARGUED NOVEMBER 10, 1964—DECIDED JANUARY 7, 1965—
REHEARING DENIED FEBRUARY 4, 1965.

*Wendell J. Helton, Robert T. Efurd, Robert T. Efurd, Jr.,* for plaintiff in error.

*William T. Boyd, Solicitor General, J. Walter LeCraw, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General, Paul Ginsberg,* contra.

GRICE, Justice. Convicted of murder, John Wesley Wheeler assigns error upon the denial of his motion for new trial, the addition to such motion of two notes by the trial judge, the striking of an affidavit from such motion by the trial judge, and the legality of his sentencing. He was indicted by the grand jury of Fulton County for the murder of Jesse Sagoes and upon trial in the superior court of that county was found guilty without a recommendation.

■ The three general grounds of his amended motion for new trial are without merit. There was testimony from which the jury was fully authorized to find that the defendant killed the deceased as charged in the indictment. Such testimony was

that in the early morning the defendant entered the room where the deceased was in bed, and without any provocation struck him several blows on the head with a heavy instrument, producing his death. Having been approved by the trial judge, the verdict will not be disturbed by this court.

■ Grounds 4 and 11 complain of the failure to declare a mistrial because of alleged prejudicial remarks by the assistant solicitor general during his argument to the jury, which remarks were not cured by the court in any manner.

In ground 4 the defendant contends that the language was "We cannot let this man go back to animal kingdom." However, the trial judge added to this ground a note reciting that the language was "These people are living in animal kingdom."

In ground 11 the defendant avers that the assistant solicitor general's reference in his argument to the defendant and "animal kingdom" violated his right to a fair trial under both the Federal and State Constitutions. He further urges that the reference to him living in "animal kingdom" tended to make the jury believe that the Negro race was an inferior or evil race, that this language was improper since his character had not been put in issue, and that such argument tended to degrade him.

In connection with these grounds of his amended motion for new trial the defendant submitted an affidavit by a spectator in which the affiant stated that he was present during the trial and purported to recount the language used by the assistant solicitor general, with his own conclusions from it. This affidavit was ordered stricken by the trial judge.

■ As we regard it, the argument complained of in these two grounds did not require the grant of a mistrial.

The argument which calls for mistrial is that which introduces facts not in evidence and is calculated to prejudice the defendant, not flights of oratory, figurative speech or false logic. *Powell v. State,* 179 Ga. 401 (4), 411-412 (176 SE 29). See also *Patterson v. State,* 124 Ga. 408 (1) (52 SE 534); *Radcliff v. State,* 220 Ga. 169 (2) (137 SE2d 654).

The argument here was a reasonable and permissible deduction from the testimony, which described a group of people who lived together in one house and whose conduct was grossly

immoral. No mention appears in the argument or evidence as to any of these people being members of the Negro race. The language used was not improper.

■ In this same connection, the assignment of error in the bill of exceptions complaining of the trial judge's appending the note to ground 4 is not meritorious.

In so doing the trial judge was properly seeking to cause the factual recitals of the motion to speak what he regarded to be the truth. The law places that responsibility upon him.

■ There is no merit in the assignment of error in the bill of exceptions as to the trial judge having ordered the affidavit of the spectator stricken from these grounds. As stated in Division 2(b), above, it is the responsibility of the trial judge to make the motion speak the truth as to the facts. He could therefore properly order stricken a recital which he considered to be inaccurate.

■ In ground 5 the defendant insists that the trial judge expressed an opinion while questioning a witness for the State. The judge asked "Do I understand that he cut him at the time he hit with an axe?" The defendant urges that this implied to the jury that he hit the deceased with an axe, whereas the same witness had previously testified, "I can't say for sure it was an axe," and "I couldn't tell exactly what it was." To this ground the trial judge appended a note which in material part stated that when he asked the question he "had not clearly heard what the witness had said, on account of the witness's voice not being quite loud enough," and "was merely seeking to get from the witness a clarification of what she had said about a previous cutting having taken place . . ."

■ The judge's question was not an expression of opinion as to what had been proved, in violation of *Code* § 81-1104, but was an effort to ascertain what the witness had just said. The transcript of the testimony and the form of the question—"Do I understand that . . ."—show this. The judge has the right to question witnesses for the purpose of developing the truth of the case, so long as he does not do it in such a manner as to intimate an opinion upon what has or has not been proved or upon the guilt of the accused. See *Johnson v. State,* 169 Ga.

814 (2), 821 (152 SE 76). No intimation of such opinion is contained in the question complained of here.

■ The assignment of error in the bill of exceptions as to the trial judge's addition of the note to this ground 5 of the motion for new trial is not meritorious. The note added nothing since, as stated in Division 3 (a), above, it is apparent from the transcript of the testimony itself that the question was asked in an effort to ascertain what the witness had said and intimated no opinion.

■ By ground 6 the defendant asserts that the trial court erred in failing to charge the jury upon involuntary manslaughter in that there was no evidence to identify the instrument allegedly used as one likely to produce death. This assertion is not sustainable.

There was testimony that an axe was kept in the portion of the house where the crime was committed. An eyewitness identified the weapon used as an axe or a crowbar. The examining physician testified that death was due to fractures of the skull from a heavy, sharp instrument.

Furthermore, under no version of what occurred was involuntary manslaughter involved. Failure to charge upon it was not error.

■ The defendant in ground 7 claims error in that when the jury requested a re-charge the trial judge expressed an opinion injurious to him by the following remarks: "You seem to be having difficulty in arriving at a verdict in this case. Is your trouble a question of fact or a question of law?" In no sense was this language an expression of opinion prejudicing the defendant's rights under *Code* § 81-1104, supra, and therefore this ground is not valid.

■ Ground 8 complains that the trial judge erred in his re-charge pertaining to the jury's right to recommend mercy and urges that the recharge did not cover the subject matter of the request.

What occurred was as follows.

The foreman stated, "Our problem is as to a recommendation of mercy . . . We are interested in the part about the recommendation of mercy in your charge."

The court then re-charged in the identical language previously given: ". . . if you should find this defendant guilty of the offense of murder, you would have a right to recommend him to the mercy of the court. If you should find this defendant guilty of the offense of murder as charged, and if you should wish to recommend him to the mercy of the court, then in that event the form of your verdict would be as follows: We the jury, find the defendant guilty, and we recommend him to the mercy of the court. Now, should you return that form of verdict, it would mean that the defendant would receive a sentence of imprisonment and labor in the penitentiary, for life. If you find this defendant guilty of the offense of murder as charged and if you do not care to recommend him to the mercy of the court, or do not recommend him to the mercy of the court—then in that event the form of your verdict would be as follows:—We, the jury, find the defendant guilty. Now should you return that form of verdict it would mean that the defendant would receive a sentence of death by electrocution as provided by law."

The court then asked "Does that answer your question?" and the foreman answered, "I am not . . . no, your Honor, we are interested in the part concerning the mercy, as far as extenuating circumstances. I think that came a little earlier." Then the court asked, "Do you have reference to manslaughter?" The foreman replied, "No sir . . . I think that answers it."

The criticism here is two-fold.

It is contended that it was error to charge as to the jury's *not* making a recommendation of mercy, in that such was not requested and confused the jury by placing in their minds a thought other than recommending mercy. This position is not sound. The request by the jury for re-charge dealt with a subject which necessarily embraced alternatives. The response by the court gave the form of verdict and sentence for each of these alternatives so that the jury could weigh them and make a choice.

The other contention is that when the foreman stated, "We are interested in the part concerning the mercy, as far as extenuating circumstances. I think that came a little earlier," the

court should have repeated the earlier portions of the charge on such subjects as self-defense, cooling time, voluntary manslaughter and one's right to protect his home. This contention cannot be sustained.

In this situation "The law leaves to the discretion of the jury whether they will recommend life imprisonment, and does not prescribe any rule by which they may exercise this discretion, and any instruction which tends to qualify this right, or points to the manner of its exercise, is cause of setting aside a verdict where no recommendation is made. [Citations.] The better practice is for the trial judge to call the attention of the jury to the law and merely state that they may add to the verdict of guilty a recommendation that the defendant be imprisoned in the penitentiary for life." *Jennings v. State,* 212 Ga. 58, 59 (90 SE2d 401). Thus, the trial judge was proper in limiting the re-charge to the correct instructions already given. This was sufficient compliance with the request, as indicated by the foreman's statement, "I think that answers it."

■ In ground 9 the defendant claims that the trial judge erred in failing to charge upon credibility of witnesses. He urges that even without a request, the court should have charged *Code* § 38-1805 on this subject. This ground is without merit.

The jury were instructed to give the evidence and the defendant's statement such weight and credit as they thought they were entitled to receive and to apply the facts to the law given by the court so as to render a verdict that spoke the truth. The entire charge was full and fair. Furthermore, this court has held that it is not error to fail to give *Code* § 38-1805 where, as here, there is no written request. See *White v. State,* 141 Ga. 526 (3) (81 SE 440); *Benton v. State,* 185 Ga. 254, 257 (6) (194 SE 166).

■ Ground 10 asserts that the trial court erred in ruling that a question which the defendant asked his witness was leading and in refusing to permit this witness to give certain testimony.

(a) The question held to be leading was "Why were you not there?" It sought to elicit why the witness, in whose home the homicide occurred, was not in the house when the crime was

committed. She had just testified that she was not present. As we view it, the ruling on this question was erroneous. This question did not suggest the answer and, as is shown hereinafter, the ruling was prejudicial to the defendant.

(b) The testimony which was excluded followed that question. It was an explanation of why she was not there. The defendant sought to show by this witness that she was his common law wife, and that she was not in the house when the homicide occurred because the deceased had run her away. This ground urged that the materiality of this testimony was that the defendant had the right to protect his home, habitation, and the persons living in his home, and that it was material to his defense.

As we appraise it, the question asked and the testimony offered were material to a defense of voluntary manslaughter, which was an issue in the case and upon which the trial judge later charged. That the deceased had recently attempted to kill and had run the defendant's alleged common law wife away from their home may have constituted circumstances "to justify the excitement of passion and to exclude all idea of deliberation or malice"; and the defendant's act may have been "the result of that sudden, violent impulse of passion supposed to be irresistible . . ." contemplated by *Code* § 26-1007. The fact that the deceased attempted to kill the defendant's alleged common law wife on Friday night, causing her to leave their home on Saturday, and that the homicide did not take place until Sunday morning would be facts for the jury to consider on the question of sufficient cooling time. By *Code* § 26-1007, supra, "the jury in all cases shall be the judges" as to whether there has been an interval between the assault or provocation given and the homicide "sufficient for the voice of reason and humanity to be heard."

Therefore, the question held to be leading and the testimony offered were relevant on the issue of voluntary manslaughter and thus were material to the defense of the defendant.

There is no merit in the State's contention that the evidence complained by this ground to have been excluded was subsequently actually elicited from this same witness. The record

shows that the portion which was elicited was ruled out by the trial judge.

This ground was meritorious, and the denial of a new trial was erroneous.

■ The remaining contention made in the bill of exceptions is that the defendant was illegally sentenced. Since the case is reversed and it is unlikely that the alleged error will reoccur, it is unnecessary to deal with this assignment of error.

For reasons stated in Division 8, the trial judge erroneously denied the amended motion for new trial and, accordingly, the judgment as to it is reversed.

Since none of the other assignments of error made in the bill of exceptions shows any error to have been committed, those judgments are affirmed.

*Reversed in part; affirmed in part. All the Justices concur, except Candler and Almand, JJ., who dissent from the ruling in Division eight and from the judgment of reversal.*