### 25725. MITCHELL v. THE STATE.

ARGUED APRIL 13, 1970—DECIDED MAY 28, 1970—
REHEARING DENIED JUNE 15, 1970.

*Solms, Gannam, Head & Buchsbaum, Aaron L. Buchsbaum,* for appellant.

*Andrew J. Ryan, Jr., District Attorney, Tom Edenfield, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, Assistant Attorney General, Wade V. Mallard, Jr.,* for appellee.

PER CURIAM. Calvin Mitchell, the appellant, was indicted and tried for kidnapping, robbery, and rape. He was convicted of all three offenses, and was sentenced to 20 years on the charge of robbery, 7 years on the charge of kidnapping to be served consecutively, and life imprisonment for the rape offense.

He filed a motion for new trial on the general grounds and five special grounds, which was denied; and from that judgment he appealed. The denial of the motion for new trial is enumerated as error, and several grounds of the motion for new trial are specifically enumerated as error.

■ The defendant's second and fifth enumerations of error were the denial of his motion to quash the indictment and the overruling of his challenge to the array of jurors, on the ground that he is a member of the Negro race and that members of

his race were systematically, unlawfully, and unconstitutionally discriminated against in the selection of the juries indicting and trying him.

The defendant was indicted in January, 1967, by the December, 1966, grand jury of Chatham County, and this list was selected from the tax digests, in accordance with the law at that time. He was tried in 1967 by a jury drawn from a list compiled after the passage of the law requiring that jurors be selected from the voters' list. The parties stipulated that the 1960 census showed that the population of the county consisted of 68% whites and 32% Negroes, on the 1966 grand jury venire there were 816 whites and 87 Negroes; and on the 1967 jury venire there were 6,264 whites and 854 Negroes.

The defendant contends that the disproportionate percentage of Negroes and whites, selected from segregated tax digests, as to the 1966 grand jury, and from an old list, revised by, and supplemented from, the voters' list, as to the 1967 petit jury, constituted a prima facie case of purposeful discrimination which was not rebutted by the State, citing Whitus v. Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599); and Jones v. Georgia, 389 U. S. 24 (88 SC 4, 19 LE2d 25).

There was extensive evidence as to how the jury lists were selected. The jury commissioners testified that they considered the name of each person on the tax digests, as to the 1966 jury, and on the voters' list, as to the 1967 jury. They used the city directory, the telephone book, questionnaires to prospective jurors, and personal knowledge of the commissioners. They selected what they thought to be the upright and intelligent citizens without any percentage factor of racial groups in mind. The jury commissioners were selected to represent various ethnic and economic groups of the county. One of the six commissioners was a member of the Negro race. The other commissioners relied mainly on him for information as to the qualifications of members of his race, and submitted to him for his opinion names of Negroes whom they considered qualified. This Negro member testified that he had made an effort to get more members of the Negro race on the jury lists and succeeded in getting a substantial increase, and that he had the cooperation of the other members of the board in this effort.

The evidence was sufficient to overcome the prima facie case of purposeful discrimination in the selection of the grand jury and the motion to quash the indictment was properly denied. The evidence in regard to the 1967 petit jury list did not show any purposeful discrimination. Compare *Lingo v. State,* 224 Ga. 333 (162 SE2d 1); *Thacker v. State,* 226 Ga. 170 (173 SE2d 186).

■ Enumeration of error 4 is on the court's denial of the defendant's motion to suppress evidence seized pursuant to his arrest without a warrant, in violation of *Code* § 27-207. If the arrest were illegal, the evidence seized ancillary to that arrest was not admissible in evidence. Mapp v. Ohio, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081).

*Code* § 27-207 provides: "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." The phrase "likely to be a failure of justice" means "probable ground for believing that there will be a failure of justice." *Giddens v. State,* 152 Ga. 195, 199 (108 SE 788).

We are of the opinion that the facts support the conclusion that an arrest without a warrant was proper, for the reason that there was likely to be a failure of justice for want of an officer to issue a warrant. Those facts are as follows: The victim's husband, who was a truck driver, at about 12:30 a.m. on December 7, 1966, called his wife to drive to his place of employment and get him, which was their usual custom. On her way to get her husband, she stopped at a red light. The defendant rushed from the curb, jumped in the car, placed a black-looking instrument, which she thought was a pistol, in her side, and ordered her to drive as he directed. They came to a dead-end road, where he forcibly and against her will raped her. She then drove to the place designated by her husband, picked him up, and reported the rape to him, who in turn reported it to the police and directed them to the place of the crime. The officers saw footprints leaving the scene. The tracks showed the mark of an unusual and distinctive shoe

sole. They followed the tracks to a house. They knocked at a door, but did not find the person wearing those shoes, but the man there told them there was a person in the room across the way. The door to that room was partly opened. They threw the flash light in the room, and saw a shoe with a sole which they recognized as being one of those making the tracks they had followed. They saw a Negro male in bed, with his eyes open, and about the age of the person they sought. They entered and placed him under arrest.

These officers were in pursuit of a person, unknown to them, who had just committed a capital felony. They found a person answering the description of the rapist, and saw the shoe which apparently made the tracks they were following. It was at an early hour of the morning, in the darkness. The rapist had been reported to them to have a pistol. They were justified in believing that he might try to make an escape before they could obtain a warrant, and that he might kill or injure an officer or officers, or might be killed himself.

The defendant's counsel points out the fact that officers waited approximately fifteen minutes before making the arrest to obtain a flashlight battery. However, this was prior to the time that the defendant was discovered. After it became apparent that he was the man they were hunting, an arrest without a warrant was justified, since all of the circumstances authorized their belief that there would likely be a failure of justice if they waited until they could obtain a warrant before making the arrest.

There was thus no error in refusing to suppress the physical evidence obtained from the defendant at the time of his arrest without a warrant.

■ The sixth enumeration of error is on the admission, over objection, of testimony of the victim's husband, when his name was not on the list furnished to the defendant of witnesses who would testify in the case, in violation of the Constitution, Art. I, Sec. I, Par. V (*Code Ann.* § 2-105), and *Code* § 27-1403, as amended by Ga. L. 1966, pp. 430, 431, which provides that, without the consent of the defendant, no witness shall be permitted to testify for the State whose name does not appear

upon a list of witnesses as furnished to the defendant, unless the solicitor or prosecuting attorney shall state in his place that the evidence sought to be presented is newly-discovered evidence, which the State was not aware of at the time of furnishing the defendant with a list of witnesses.

The district attorney stated in his place to the court that for the first time, when the witness came into the office "yesterday morning," he volunteered information that the district attorney did not know of before that time. Accordingly, the court did not err in permitting the witness to testify.

■ Enumeration of error 7 is that the court erred in not sustaining the defendant's objection to the following statements made to the jury by the district attorney in his closing argument: "He didn't have very far to go if he'd gone home. He was only maybe two or three doors away from the place where they found him. But he didn't go home. He lived at 105 Millen Street. They didn't find him at 105 Millen Street. Has he told you why he wasn't home? Why he wasn't sleeping at home at half past 1:00 in the morning? Has he told you why he went to an address at 111 Millen Street? In a room that was only occupied by him at that time? Why hasn't he told you? Was there any reason why he didn't go home?" Counsel for the defendant made a motion for a mistrial on the ground that the district attorney was commenting on the failure of the defendant to make a statement.

In the trial of a criminal case in which the accused fails to give sworn testimony or to make an unsworn statement, it is improper for State's counsel to argue that fact to the jury. *Minor v. State,* 120 Ga. 490 (1) (48 SE 198); *Barker v. State,* 127 Ga. 276 (1) (56 SE 419); *Parks v. State,* 208 Ga. 508 (1) (67 SE2d 716); *Code* § 38-415, as amended by Ga. L. 1962, pp. 133, 134.

It is the opinion of the majority of this court that since these comments make no direct reference to the failure of the defendant to testify or make an unsworn statement, the district attorney was not prohibited from making these comments concerning the evidence in the case, and the trial judge properly denied the motion for mistrial.

■ Counsel for the defendant argues in his brief the illegality of the police line-up, where the defendant was identified by the victim of the rape as her assailant. However, this is not a ground of the motion for new trial, as amended, nor is it otherwise enumerated as error. Thus no ruling will be made on the question.

■ The general grounds of the motion for new trial were not argued and are considered abandoned. The evidence established the guilt of the accused beyond doubt.

Several of the special grounds of the motion for new trial, and enumeration of error 3, were not argued and are considered abandoned.

*Judgment affirmed. All the Justices concur, except Mobley, P. J., Grice and Felton, JJ., who dissent from the ruling in Division 4 and the judgment of affirmance.*

MOBLEY, Presiding Justice, dissenting. I dissent from the ruling of the majority in Division 4. It is my opinion that the questions of the district attorney, "Has he *told* you why he wasn't home? . . . Has he *told* you why he went to an address at 111 Millen Street? . . . Why hasn't he *told* you?" (emphasis supplied) amounted to comments on the defendant's failure to take the stand and testify or make an unsworn statement, which comments are prohibited. The only way the defendant, during the trial of his case, could have told the jury why he was not at home would have been by taking the stand and testifying or making an unsworn statement.

I am authorized to state that Mr. Justice Grice and Mr. Justice Felton join me in this dissent.