**Joseph BONAPARTE, Petitioner,**

v.

**S. Lamont SMITH, Warden, Georgia State Prison, Reidsville, Georgia, Respondent.**

**Civ. A. No. 2724.**

United States District Court,
S. D. Georgia,
Savannah Division.

Feb. 9, 1973.

---

Eugene H. Gadsden, Savannah, Ga., for petitioner.

David L. G. King, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent.

## ORDER

LAWRENCE, Chief Judge.

Joseph Bonaparte was convicted by a jury in the Superior Court of Chatham County, Georgia, in January, 1967, of the crimes of rape and robbery. He appealed to the Supreme Court of Georgia contending that the circumstantial evidence was insufficient to support such convictions. The Supreme Court affirmed the rulings below. See Bonaparte v. State, 223 Ga. 623, 157 S.E.2d 271; 223 Ga. 648, 157 S.E.2d 272.

In 1969 Bonaparte filed a habeas corpus petition in Tattnall County Superior Court in which he contended that (1) he was illegally arrested without probable cause and without a warrant; (2) an illegal search (of his person) was conducted and an illegal seizure of his wearing apparel was made; (3) he was not given the *Miranda* warnings; (4) he was denied the right to have his attorney present while being interrogated by the police; (5) he was forced to appear in a police lineup and to be fingerprinted in contravention of his right against self-incrimination; (6) he was denied effective assistance of counsel because his retained attorney did not call certain alibi witnesses; (7) he did not have a fair trial; (8) the evidence submitted was circumstantial and did not support the conviction, and (9) he was indicted by an illegal grand jury and tried by an illegal petit jury in that blacks were systematically excluded from such juries in Chatham County, Georgia.

Judge Caswell denied the petition. Bonaparte failed to appeal to the Supreme Court of Georgia.

In October, 1970, he filed a § 2254 petition in this Court raising the identical issues heard by the Superior Court of Tattnall County. The petition was dismissed by me on the ground that there was deliberate bypass by knowing and intentional waiver of an appeal to the Supreme Court of Georgia. This ruling was reversed by the Fifth Circuit. This Court was directed to hold an evidentiary hearing so as to afford Bonaparte an opportunity to discharge his burden of showing that his failure to appeal was not a deliberate bypass of state remedies. See Bonaparte v. Smith, 5

Cir., 448 F.2d 385. Such an evidentiary hearing was held. I found that there was no deliberate bypass.

On February 18, 1972, an evidentiary hearing on the § 2254 motion was held. By consent of the parties evidence was confined to the claim of systematic exclusion of blacks from juries in Chatham County.[1] No evidence was heard before the Superior Court of Tattnall County in that connection.

The respondent submitted complete transcripts of both the trial and the state habeas corpus proceeding. As stated, Judge Caswell denied all of the grounds of the petition of the writ of habeas corpus. He treated the issue as to the illegally constituted juries as having been abandoned by Bonaparte. Although the Superior Court of Tattnall County dealt with each of the other grounds, I will discuss the various contentions in the order in which they appear in the § 2254 proceeding in this Court.

**█ 1.** Petitioner contends that the arrest was illegal because made without a warrant and that there was no probable cause therefor. The records show that after the alleged crimes were committed neighbors reported same to the police. The latter were able to follow the apparent footprints of the assailant from the scene of the crime to a point under a house. When the police arrived, he came out from under the house and ran. He was chased for eight blocks before the pursuing officer lost sight of him. Less than thirty minutes later Bonaparte was picked up a few blocks away from that point by another policeman who heard a description broadcast over the police radio. He was identified as the same man the officer recognized when he came out from under the house. Under these circumstances, there was clearly probable cause for the arrest and no warrant was necessary. United States v. Skinner, 412 F.2d 98 (8th Cir.).

**█ 2.** Petitioner claims that at the time of his arrest there was illegal search of his person in that the police unlawfully took his shoes for a comparison with the impressions found under the vacant house. The claim that the search and seizure was illegal is without merit. The search was incidental to a lawful arrest. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The shoes were in plain view and their seizure was incidental to the arrest. See Davis v. United States, 409 F.2d 1095 (5th Cir.). Evidence of a non-communicative nature may be taken from defendant without violating any Fifth Amendment right against self-incrimination. Cassady v. United States, 410 F.2d 379 (5th Cir.).

**█ 3-4.** Bonaparte claims that the police failed to advise him of his *Miranda* rights. The failure to inform a defendant of such rights does not in and of itself require the granting of habeas corpus without some showing of prejudice. Petitioner has not shown that he was prejudiced by the lack of such warnings. No confession was given or was used at the trial. It is not contended that exculpatory statements were elicited in any interrogation, if indeed he was questioned out of the presence of counsel. See Gregoire v. Henderson, D. C., 302 F.Supp. 1402.

**█ 5.** Neither the lineup itself nor anything required therein violated petitioner's Fifth Amendment privilege against self-incrimination. Merely exhibiting one's self for observation by witnesses involves no compulsion to give evidence of a testimonial nature. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The privilege protects an accused only from being compelled to testify against himself or otherwise provide the prosecution with evidence of testimonial nature. The Fifth Amendment "offers no protection against compulsion to submit to

---

1. My delay in ruling upon the petition in this case has resulted from the failure of the State to file a brief until November, 1972.

fingerprinting, photographing or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). Petitioner has made no showing that the identification procedure was so suggestive as to give rise to substantial likelihood of irreparable mis-identification. His appearance in a police lineup and the taking of his fingerprints was evidence of a non-communicative nature and such may be obtained without violating his rights against self-incrimination. Cassady v. United States, 410 F.2d 379 (5 Cir.); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

 6. Petitioner retained the legal services of Messrs. Limerick Odom and James F. Becton. He now claims that he received the ineffective assistance of counsel. Relief from a conviction because of incompetent or ineffective representation will be granted only when the trial was a farce or a mockery of justice, or was shocking to the conscience of the reviewing court, or if the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. The right of the accused to counsel does not require errorless counsel. See Bell v. Alabama, 367 F.2d 243 (5 Cir.); United States v. Long, 419 F.2d 91 (5 Cir.). Upon examination of the transcript of the trial I find no ineffective assistance of counsel. Mr. Odom called numerous witnesses on behalf of the defendant and conducted a vigorous cross-examination of the prosecution's witnesses. Petitioner's claim that there were alibi witnesses available but not called by his attorneys is refuted by his own statement at

the State habeas corpus hearing that he had been in several bars on the night in question but that the patrons therein could not remember him being there.

7. I find no evidence in the record to show that petitioner received anything other than a fair and impartial trial. The seventh claim is without merit.

 8. So is the contention that the evidence was circumstantial and did not support the conviction. Besides the evidence that I have previously referred to, his fingerprints were found on the victim's car. He was identified by a policeman as being the man who emerged from under the house where the victim's purse was found. He fled when approached by the police. Bonaparte was identified by the victim both in a lineup and in the courtroom. Sufficiency of the evidence is not a ground for federal habeas corpus relief. Pleas v. Wainwright, 441 F.2d 56 (5th Cir.); Fulford v. Dutton, 380 F.2d 16 (5th Cir.). The evidence fully supported a verdict, as the Supreme Court of Georgia has held.

9. Petitioner's final allegation (illegal grand jury and petit jury) was the subject of a lengthy evidentiary hearing in this Court. Bonaparte was represented by court-appointed counsel, Mr. Eugene Gadsden of the Savannah bar.

In Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) the Supreme Court held that the use by the State of a jury selection system which had been previously condemned constituted a *prima facie* case of purposeful discrimination, shifting the burden of proof from petitioner to the State. The applicable Georgia law involved in *Whitus* (and in the present case) required the jury commissioners of each county to select from the books of the tax receiver "upright and intelligent citizens" to serve as jurors. Under the Georgia statute the 1964 tax digest was made up from segregated tax returns on which names of Negroes were designated by a "(C)" opposite them.[2] In Sims v. Geor-

---

2. Since 1967 petit jurors and since 1968 grand jurors have been selected in Georgia from the official registered voters' list.

Ga.Code Ann. § 59–106; Ga.Laws, 1967, p. 251; 1968, p. 533.

gia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed. 2d 634 (1967) blacks constituted 24.4% of the individual taxpayers in the county but were represented by only 4.7% of those on the grand jury and 9.8% of the traverse jury list. The State's only response to that showing was to call as a witness a jury commissioner who testified that he and the other commissioners did not discriminate in selecting names. The Supreme Court found that this evidence fell short of refuting the presumption of discrimination. See also Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), another Georgia case dealing with racial under-representation on juries.

■■■■■ Jury commissioners have a duty not to pursue a course of conduct which results in racial discrimination. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Mere affirmations of good faith are insufficient to dispel a *prima facie* case of systematic exclusion where the opportunity for discrimination is present and where respondents fail to show that it is not practiced by the jury commissioners. Turner v. Fouche, *supra,* 396 U.S. at 361, 90 S.Ct. 532; Jones v. Georgia, 389 U.S. 24, 25, 88 S.Ct. 4, 19 L.Ed.2d 25 (1969); Sims v. Georgia, *supra,* 389 U. S. at 407, 88 S.Ct. 523.

The testimony at the February, 1972, hearing shows that each of the six jury commissioners who compiled the 1966 venire represented some identifiable community group according to religion and race. Of the six commissioners only one was a black. They were selected on the basis of wide-spread community contacts which their varied occupations afforded them. Of the population of Chatham County eligible for jury duty, Negroes represented 22% of the total.[3] Blacks compose 10% of the master jury list. In selecting prospective jurors the commissioners used the tax digests which were segregated on a racial basis.

Among the witnesses at the hearing were R. C. McCabe, Tax Assessor of Chatham County; Ben P. Axson, Clerk of Chatham County Superior Court as well as Clerk of the Jury Commission; Armand D. Wells, Chairman of the Commission, and Thomas J. Hopkins, the black member.

The tax digest of the 1966 returns shows 77.87% white and 22.13% black taxpayers. Mr. Hopkins testified that his "job" was to increase the number of blacks on the jury list. He and the other commissioners called upon Negro organizations and leaders to suggest names of blacks to serve on juries. The other five commissioners never rejected any name suggested by Hopkins or Negro organizations. The white commissioners also offered names of blacks to be placed on the jury list.

Wells and Hopkins testified that they considered the name of each person on the tax digests. They also resorted to the city directory, the telephone book, questionnaires to prospective jurors and their personal knowledge. They selected those they thought to be upright and intelligent citizens without any percentage factor of racial groups in mind. Mr. Hopkins testified that he made an effort to get more members of the Negro race on the jury list and that in this effort he had the cooperation of the other members of the Board.

The 1966 jury venire from which the grand and petit juries which respectively indicted and convicted Bonaparte were chosen was composed of 903 grand jurors of whom 816 were white and 87 black and a petit jury list made up of 8,511 persons of whom 7,480 were white and 1,031 black. Figures are not available to show the number of blacks on the petit jury which tried Bonaparte. However, the grand jury that indicted him for robbery and rape consisted of at least three blacks out of twenty-three.

■■■■ I find that the jury system was not illegal despite the fact that blacks

3. According to the 1960 census, Chatham County contained 32% "non-whites" over 21 years of age and 68% whites.

constituted a smaller percentage on the jury list than their 32% of the total population.

The commissioners did not restrict their selection to personal acquaintances. They sought names from several sources. The under-representation of blacks does not *per se* amount to purposeful discrimination based on race alone. Swain v. Alabama, 380 U.S. 202, at 208–209, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In that case the under-representation was 10%. The testimony at the hearing before this Court showed that the Clerk, Mr. Axson, and Jury Commissioners made deliberate efforts to obtain names of blacks for the jury box. See United States v. Hyde, 448 F.2d 815 (5 Cir.). I am confident that under the evidence racial discrimination did not contribute to any racial imbalance.

Petitioner has not shown the existence of a system insensitive to the need for a cross-section of the community. Nor is there evidence of discriminatory factors explaining disproportion. Bonaparte has probably made out a *prima facie* case of racial discrimination in jury selection in showing that a substantial disparity exists between presumptively qualified blacks in the general population and their presence on the jury list. It also appears that the selection procedure provided opportunity for discrimination. Whitus v. Georgia, *supra*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed. 2d 599; Colson v. Smith, 438 F.2d 1075 (5 Cir.); Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); Williams v. Smith, 434 F.2d 592 (5 Cir.). Under these circumstances, the burden shifted to the State to justify the disparity. Muniz v. Beto, 434 F.2d 697

(5 Cir.). However, I find that the evidence in this case overcomes any presumption of purposeful discrimination in the selection of the 1966 jury venire in Chatham County.[4]

The petition is denied on all grounds

---

4. A similar method of selection of a Chatham County grand jury was upheld in Mitchell v. State, 226 Ga. 450, 175 S.E.2d 545 (1970); cert. den. 400 U.S. 1024, 91 S.Ct. 585, 27 L.Ed.2d 637. In *Mitchell* the defendant was indicted by a grand jury chosen from the tax digest and tried by a petit jury selected from the voters' list. The Supreme Court upheld both methods, stating (226 Ga. at p. 453, 175 S.E.2d at p. 547): "The evidence was sufficient to overcome the *prima facie* case of purposeful discrimination in the selection of the grand jury and the motion to quash the indictment was properly denied. The evidence in regard to the 1967 petit jury list did not show any purposeful discrimination."