## 30111. LEUTNER v. THE STATE.

UNDERCOFLER, Presiding Justice.

Appellant, Christopher Edward Leutner, was indicted for felony murder and murder with malice in the same count. He was convicted by the jury of felony murder and sentenced to life imprisonment. He appeals from the denial of his motion for new trial.

The evidence shows that sometime prior to July 24, 1974, the defendant obtained a quantity of marijuana and some other drugs. On the morning of the 24th a couple of defendant's friends came to his house, smoked marijuana and then left. Later the defendant went to a bowling alley, the Macon Bowl in Shurlington Plaza, Macon, Georgia, talked to several of his friends about the marijuana he had at home and then departed for his home with them. They smoked until 9:00 or 9:30 p.m. when they all went back to the bowling alley. Defendant was shooting pool sometime later when several of the others said they were going to a party and left without the defendant. Six persons got into one of their cars and drove to the defendant's house. They were Hugh Eden, Phil Justice, Danny Ray Bell, Frankie Linderman, Tony Logue and David Foster. The defendant's stepbrother was there when they arrived. Two or three of them went in first and David Foster later decided to go in to use the telephone. He knocked on the front door and when the stepbrother answered the door, the others on the inside took a bag of drugs from the kitchen without the awareness of defendant's stepbrother. Later they went back to the car and divided

the contents of the bag.

The defendant remained at the bowling alley until it closed at midnight. When he went home, he discovered the bag containing drugs was missing and questioned his stepbrother about it. His stepbrother told him of the earlier visit by his friends and described them to him.

The defendant went to the bowling alley the next morning around 10:00 or 11:00 and took his father's pistol with him. He discovered that David Foster, the deceased, fit the description given by his stepbrother. The defendant talked to several persons about being "ripped off" the night before and patted a bulge in his pocket which resembled a gun.

Defendant questioned Danny Bell at pistol point behind the bowling alley and elicited a promise that Bell would help him find who had stolen the drugs.

David Foster, the deceased, showed up at the bowling alley around 8:00 p.m. on the 25th while the defendant was shooting pool. The defendant invited Foster outside to smoke a joint with him. Danny Ray Bell was present and the three of them went out behind the bowling alley and sat down on some steps in a wooded and rather secluded area behind the bowling alley. The defendant handed Foster a bag of marijuana and told him to roll one. Defendant then pulled a gun, cocked it and pointed it at Foster's head, who was sitting below and in front of the defendant on the steps. There was some conversation in which the appellant asked Foster about his marijuana. Foster denied taking it and said he could prove by defendant's stepbrother that he had not taken it. Defendant told Bell to "get us a car." Danny Ray Bell turned and went up the steps. As he neared the top he heard a shot. Both the defendant and Bell fled from the scene leaving Foster lying mortally wounded on the steps where he was discovered a short time later by an eleven-year-old boy. At approximately 9:45 p.m. the defendant called the police department and surrendered. He produced the fatal weapon for the police and helped recover the spent cartridge. Foster was killed by a bullet wound over the left eye.

The defendant testified that he shot the deceased but claimed the hammer of the weapon slipped and the

shooting was an accident. There was evidence that the hammer was subject to slip in taking the hammer from the cocked position to the uncocked position. The hammer had at one time been broken and had been modified with the addition of a piece of plastic substance. There was also evidence that the weapon operated properly under test conditions.

Although appellant does not argue the general grounds, the foregoing recitation of the facts is necessary to an understanding of the appellant's enumerations of error. Additional facts will be developed as required. *Held:*

1. Enumerated error number 1 merely alleges error by the trial court in overruling appellant's motion for new trial, as amended. Specific grounds are incorporated into the other enumerations.

2. Enumerated error number 2 alleges the court erred in overruling appellant's demurrer to the indictment in that the indictment charged appellant with two separate and distinct crimes, viz., felony murder and murder with malice and being two separate and distinct crimes they should be embraced in separate counts if the appellant is to be called upon to defend said indictment.

Code Ann. § 26-1101 (Ga. L. 1968, pp. 1249, 1276) embraces both (a) murder with malice and (b) felony murder.

This court has long held that where one offense could be committed in several ways, it is permissible to incorporate the different ways in one count. *Heath v. State,* 91 Ga. 126 (16 SE 657); *Long v. State,* 12 Ga. 293; *Thomas v. State,* 59 Ga. 784; *Hall v. State,* 8 Ga. App. 747 (70 SE 211). The trial court did not err in overruling appellant's demurrer.

3. Enumerated error numbers 3, 4, 6 and 7 concern the admission of testimony relating to other offenses tending to place the appellant's character in issue.

The evidence objected to consisted of:

a. As to Enumeration 3: Witness Phil Justice testified that prior to the commission of the crime charged he went to appellant's house "to buy a bag of pot."

b. As to Enumeration 4: Witness Frank Linderman testified that the appellant said he was going to find out

the person that got it and he was going to get it back from them and Linderman continued and stated "and I knew that [appellant] carried a gun because I've seen it before."

c. As to Enumeration 6: On cross examination the prosecutor elicited information as to how appellant came into possession of these drugs, the purchase of the drugs, and the price paid and owed for them.

d. As to Enumeration 7: The prosecutor elicited from the appellant the statement that the appellant had sold drugs before and the implication that appellant had planned to sell these drugs.

After Phil Justice testified that prior to the commission of the crime charged he went to appellant's house "to buy a bag of pot," the defense moved for a mistrial and specifically requested that no cautionary instruction be given to the jury if the mistrial was not granted thereby effectively waiving any claim to harm by this testimony. A mistrial was not demanded because there was no indication from whom he was going "to buy a bag of pot."

Evidence of appellant's transactions in the drugs which he was trying to recover from the victim was relevant and admissible to shed light on the appellant's bent of mind and motive in confronting the victim. "[W]here such evidence of other criminal transactions is part of the res gestae or tends to show motive or to show a course of conduct pointing toward and leading to the crime" it is admissible notwithstanding that it incidentally places the appellant's character in issue. *Spurlin v. State,* 228 Ga. 2 (183 SE2d 765); *Foster v. State,* 230 Ga. 666 (198 SE2d 847); *Pass v. State,* 227 Ga. 730 (182 SE2d 779).

Testimony concerning the appellant having been seen with a gun at an unrelated time was not admitted and the trial court twice instructed the jury to disregard the statement. See *Young v. State,* 226 Ga. 553 (176 SE2d 52).

Enumerations 3, 4, 6 and 7 are without merit.

4. Appellant's brief contains no argument or citation of authority in support of his complaint of alleged hearsay testimony regarding the theft of drugs and Enumeration 5 is considered abandoned. Supreme Court Rule 18 (c), 226

Ga. 905, 914; *West v. State,* 229 Ga. 427 (192 SE2d 163); *Mitchell v. State,* 226 Ga. 450 (175 SE2d 545).

5. Enumerated error numbers 8 though 16 complain of instructions given to the jury and refusal to give the appellant's requests to charge on aggravated assault, pointing a pistol at another, and simple assault.

Where the charge given substantially covers the applicable principles, failure to give requested instructions in the exact language requested is not error. *McClendon v. State,* 231 Ga. 47 (199 SE2d 904); *Young v. State,* supra; *Jackson v. State,* 225 Ga. 553 (170 SE2d 281).

From a reading of the enumerated errors concerning the instructions given, the thrust of appellant's position is that the trial court erred in instructing by overemphasizing aggravated assault as a felony, by failing to distinguish clearly between aggravated assault and simple assault, and that he indicated an opinion by the gestures of taking his glasses off and gesturing while instructing on aggravated assault and felony murder.

The instructions given provided the proper guidance for the jury in reasonable balance between the degrees of homicide without overemphasizing any degree of homicide. The trial judge properly tailored his charge on felony murder to that in the commission of an aggravated assault with a deadly weapon, the only type of aggravated assault reasonably raised by the evidence. See *Edwards v. State,* 233 Ga. 625 (212 SE2d 802). The evidence that the appellant cocked and pointed a loaded pistol at the head of the deceased while questioning him about his complicity in the theft of the appellant's drugs justified this instruction. The trial court cearly distinguished aggravated assault and simple assault. Although the prosecutor stated that the gestures attributed to the trial court occurred at other points during the trial court's instruction, unrefuted by the appellant, the court gave a cautionary instruction to the jury to give no weight to any gesture he might have made.

The trial court did not err in the instructions given or in denial of any requested instruction. There is no merit to Enumerations 8 through 16.

6. Enumerated error 17 alleges the court erred in propounding a question to the jury after the jury verdict

was read. The verdict read: "We, the jury, find the defendant guilty in the commission of a felony." The court then asked: "Mr. Foreman, is the intent of that verdict to be, 'We, the jury, find the defendant guilty of murder in the commission of a felony?'" The foreman responded: "Sir, there was some debate over this word." Later the jury foreman asked: "Your Honor, it is requested that we ask if because of personal beliefs that the word 'killing' instead of 'murder' could be supplanted? It seems like there's a terminology here that's a stumbling block for some of our members." The court then instructed the jury to find in one of the forms given and use the word murder "if that is your verdict."

It is clear from the colloquy that the finding satisfied the statute, Code Ann. § 26-1101 (b) providing, "A person also commits the crime of murder when in the commission of a felony he *causes the death* of another human being, irrespective of malice." (Emphasis supplied.) Both murder and killing would meet the requirement of the statute.

When polled, all of the jurors stated the final verdict was theirs.

Enumeration number 17 is without merit.

7. Enumerations 18 and 19 are concerned with statements the district attorney made in his closing argument.

Enumeration number 18 concerns the following statement of the district attorney in his closing argument: "I'm sure this boy's mother will never be satisfied that he couldn't have been saved if he'd gotten the attention, and I'm not saying this just to get your sympathy. I think sympathy has got to be in this case. You can't erase the human feelings. You can't erase it, but I'm not saying that to get your sympathy."

Enumeration number 19 concerns the following statement of the district attorney in his closing argument: ". . . the defendant is the person responsible for (the deceased) not being here. So, I have to start out with the idea that the body has been buried; human life has gone and counsel don't want you to be sympathetic about it, that situation. I don't want you to be so sympathetic about it that you can't look at the facts of the case but neither do I

want you to ignore it like counsel for the defendant wants you to do. I want you to be conscious of the fact that here's a 16-year-old boy who had done something wrong . . . he had the right to straighten himself out, to live a life, to live with his mother and father, with his brothers and sisters; they had the right to have his company. To me it's a terrible thing to think of some individual setting himself up because he's violated the law as judge, jury, sentencer, executioner and then coming into here and giving such a pitiful excuse, dressing himself up to where he's still got life in his body, brings his mother to sit by him so you'll have sympathy for the mother. Have sympathy. I'm sympathetic with them. . . I'm very sympathetic with the father and I want you to be sympathetic with them but I want you to put it in perspective. I want you to give just as much sympathy to this Foster family as you give to Mr. and Mrs. Leutner. This defendant doesn't deserve anybody's sympathy really, but being human beings I know you are going to have some sympathy for him. I can't tell you to do away with it. I wouldn't think of telling you to do away with it, but I want you to think of these things. I want you to look at the pictures."

After the district attorney concluded his argument defense counsel moved for a mistrial because these remarks were highly prejudicial, inflammatory and improper.

The trial judge determined from counsel that if he did not grant a mistrial they would specifically request that he make no statement to the jury about the district attorney's remarks. Whereupon, the court stated: "All right, I'll overrule the objection and I will not attempt to make any correction or even decide whether or not it should be corrected in view of counsel's position on the matter."

We note that the state waived opening argument and the passages in issue here were in the district attorney's concluding remarks.

During argument, appellant's counsel referred to the lack of prompt medical attention by saying: ". . . in his argument he's going to cover very descriptively, forcefully the fact that Chris Leutner after he did this thing turned and ran and abandoned David Foster and that David

Foster did not die until some time later in the emergency room."

The defense having opened the issue in argument, the district attorney was entitled to comment on it in rebuttal. In addition, the posture of the passage challenged in enumeration number eighteen within the overall argument indicates a measured attempt to recognize the human tendency toward sympathy and attempt to persuade the jury to strike a balance between the deceased and the appellant and to show the frame of mind of the appellant immediately after the shooting.

The matter objected to in enumeration number 19 is either in evidence or a fair comment thereon. There was evidence from which the conclusion could be drawn that the appellant by taking a loaded pistol, hunting out the deceased, questioning him with a loaded cocked pistol at his head, and shooting him through the head killing him had indeed pre-empted the judicial process to recover his drugs. Again we note that the district attorney's reference to the pictures, "I want you to look at the pictures," was preceded in defense argument by the following reference: "That appeal [to emotions] carries not only from the floor of this courtroom to the end of the arguments but goes right into your jury room with you and that is this blood-curdling photograph of a poor, unfortunate, dead boy who's been shot in the head in bright, vivid color."

Where the language complained of introduces no new fact but is merely a forceful though possibly extravagant method of impressing on the jury the magnitude of the offense and the solemnity of the duty of the jurors, no error is shown. *Hart v. State,* 227 Ga. 171 (3) (179 SE2d 346); *Patterson v. State,* 124 Ga. 408 (52 SE 534); *Powell v. State,* 179 Ga. 401 (176 SE 29); *Miller v. Coleman,* 213 Ga. 125 (97 SE2d 313); *Wheeler v. State,* 220 Ga. 535 (140 SE2d 258); *Martin v. State,* 223 Ga. 649 (157 SE2d 458); *Holley v. State,* 225 Ga. 768 (171 SE2d 528).

Enumeration numbers 18 and 19 are not meritorious.

*Judgment affirmed. All the Justices concur, except Gunter, J., who concurs in the judgment only.*

Argued July 8, 1975 — Decided September 11, 1975.

*Mullis, Reynolds, Marshall & Horne, Gerald S. Mullis,* for appellant.

*Fred M. Hasty, District Attorney, Walker P. Johnson, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, Julius C. Daugherty, Jr., Staff Assistant Attorney General,* for appellee.