Alpha Otis O'Daniel STEPHENS,
Petitioner–Appellant,

v.

Walter ZANT, Superintendent,
Respondent–Appellee.

No. 79–2407.

United States Court of Appeals,
Fifth Circuit.

Nov. 26, 1980.

James C. Bonner, Jr., Athens, Ga., Richard Erwin Shapiro, New Orleans, La., Hugh Lawson, Hawkinsville, Ga., for petitioner–appellant.

John C. Boger, Joel Berger, Jack Greenberg, James M. Nabritt, III, Deborah Fins, New York City, Anthony G. Amsterdam, Stanford, Cal., for amicus curiae NAACP Legal Defense and Educational Fund, Inc.

Arthur K. Bolton, Atty. Gen., Harrison Kohler, Robert S. Stubbs, II, Don A. Langham, John C. Walden, Asst. Attys. Gen., Atlanta, Ga., for respondent–appellee.

Before INGRAHAM, RONEY, and THOMAS A. CLARK, Circuit Judges.

RONEY, Circuit Judge.

Petitioner, convicted of murder and sentenced to death by the State of Georgia, appeals from a denial of a writ of habeas corpus. Petitioner contends his conviction violates the Double Jeopardy Clause and his sentence is invalid under the Eighth Amendment because closing arguments were not transcribed, the jury was not properly instructed that it could recommend a life sentence if it found aggravating circumstances, and the jury was permitted to consider an unconstitutional aggravating circumstance. Although we reject his other contentions, we agree that because the jury considered an unconstitutional aggravating circumstance, petitioner's death sentence cannot stand.

In August of 1974, petitioner escaped from jail where he was serving sentences for earlier burglary convictions. He committed a number of crimes in Twiggs County, Georgia. While petitioner and an accomplice were burglarizing a house, Roy Asbell drove up in his car. Petitioner forced Asbell at gunpoint from the car, hit him several times in the face and took a large sum of money from him. Petitioner then forced Asbell back into the car and drove him approximately three miles, across the county line into Bleckley County. There, petitioner killed Asbell by shooting him twice in the head at close range.

Shortly thereafter petitioner was apprehended and was indicted by the Twiggs County grand jury for motor vehicle theft, armed robbery and kidnapping with bodily injury. Petitioner pleaded guilty in Twiggs Superior Court and was sentenced to ten years for motor vehicle theft and to life sentences for armed robbery and kidnapping.

Afterwards petitioner was indicted in Bleckley County for the murder of Roy Asbell, found guilty and sentenced to death. His conviction and sentence were affirmed on direct appeal to the Georgia Supreme Court. *Stephens v. State,* 237 Ga. 259, 227 S.E.2d 261, *cert. denied,* 429 U.S. 986, 97 S.Ct. 508, 50 L.Ed.2d 598 (1976). His state petition for a writ of habeas corpus was denied. *Stephens v. Hopper,* 241 Ga. 596, 247 S.E.2d 92, *cert. denied,* 439 U.S. 991, 99 S.Ct. 593, 58 L.Ed.2d 667 (1978). Petitioner then sought a writ of habeas corpus in federal court, alleging the same constitutional flaws as were raised in state court. The district court denied relief. Petitioner appeals, his execution having been stayed pending appeal.

Petitioner asserts four errors in his conviction and sentence: (1) jeopardy for the murder charge attached when he pleaded guilty to the kidnapping charge and therefore his subsequent murder trial was constitutionally barred; (2) the court failed to transcribe closing arguments and *voir dire*; (3) the instruction to the jury did not ade-

quately charge that they could still impose life imprisonment even if they found aggravating circumstances that would justify the death sentence; and (4) when one of the three aggravating circumstances found by the jury was later declared unconstitutionally vague, the sentence should not have been affirmed on the basis of the other two.

## I. DOUBLE JEOPARDY

The Twiggs County indictment for kidnapping recited that he killed the kidnap victim. The third count reads as follows:

### COUNT III

And the aforesaid Grand Jurors ... charge and accuse Alpha Otis O'Daniel Stephens ... with the offense of KID-NAPPING for that the said. Alpha Otis O'Daniel Stephens ... in the county aforesaid ... did unlawfully and with force and arms abduct and steal away Roy Asbell, a person, without lawful authority, and held Roy Asbell against his will and did physically abuse and did inflict and cause bodily injury to the body of Roy Asbell by beating, hitting and kicking Roy Asbell and did threaten to kill Roy Asbell and then did kill Roy Asbell by shooting Roy Asbell, contrary to the laws of said State ....

Petitioner argues that by stating that in the course of the kidnapping he killed Asbell, the State unwittingly accused him of the crime of murder because the indictment alleged all the elements of murder. When he pled guilty under Count III of the Twiggs indictment, he admitted every fact averred in the indictment. At that point, his argument continues, he ran the risk–*i.e.*, was placed in jeopardy–of a conviction of murder under a felony–murder theory. Since under Georgia law felony murder and malice murder are different ways in which one offense may be committed, *Leutner v. State*, 235 Ga. 77, 218 S.E.2d 820 (1975), he argues the State was barred by the Double Jeopardy Clause from prosecuting him for malice murder in Bleckley County.

The Supreme Court of Georgia responded to petitioner's argument by holding that malice murder and kidnapping are not the same in law or in fact and thus are not the same offense under state law. It also determined that the state legislature intended, under the test in Ga. Code Ann. §§ 26–505 to 507, to permit multiple prosecutions and punishments in a case such as this. *Stephens v. Hopper*, 241 Ga. at 598–600, 247 S.E.2d at 94–95. *Cf. Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (holding that the Double Jeopardy Clause prohibits courts from imposing greater penalties than the legislature intended).

While this is the definitive interpretation of Georgia law and binding upon this Court, *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975), the holding does not adequately respond to petitioner's argument. Petitioner's contention is not that kidnapping and malice murder are the "same offense." Rather, he asserts that felony murder was charged in the indictment, that by pleading guilty he was placed in jeopardy of conviction for that crime and therefore the state is barred from any further attempt to prosecute him for murder.

 Petitioner's contention that he was placed in jeopardy of a conviction for murder in Twiggs County is erroneous, because there was no jurisdiction in that county to try him for the homicide. The rule is absolute that a person is not put in jeopardy unless the court in which he was tried the first time had jurisdiction to try him for the charge the person now seeks to avoid. The Supreme Court has twice spoken to the point.

We assume as indisputable, on principle and authority, that before a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged.

*Grafton v. United States*, 206 U.S. 333, 345, 27 S.Ct. 749, 751, 51 L.Ed. 1084 (1907).

An acquittal before a court having no jurisdiction is, of course, like all the pro-

ceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense.

*United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896).

The Georgia Constitution requires that, unless an impartial jury cannot be obtained, "all criminal cases shall be tried in the county where the crime was committed." Ga. Const. Art. VI, § XIV, ¶ VI (Ga. Code Ann. § 2–4306). The Supreme Court of Georgia specifically held in this case that the Twiggs County court did not have jurisdiction to try the murder offense. *Stephens v. Hopper*, 241 Ga. at 599, 247 S.E.2d at 95. The Fifth Circuit held in *Tennon v. Ricketts*, 574 F.2d 1243, 1245 (1978), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979), that "it is for the Georgia Supreme Court, not this Court, to expound the decisional rules of that, jurisdiction." *Accord, Hortonville Joint School District No. 1 v. Hortonville Education Assn.*, 426 U.S. 482, 488, 96 S.Ct. 2308, 2312, 49 L.Ed.2d 1 (1976); *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975); *Eisenstadt v. Baird*, 405 U.S. 438, 441–42, 92 S.Ct. 1029, 1032, 31 L.Ed.2d 349 (1972) (all holding that the highest state court is the final authority on questions of state law and federal courts are bound to accept its interpretation of state law).

■ The question of the jurisdiction of a state trial court in a state criminal prosecution is clearly a question of state law, which binds this Court. Since the Twiggs Superior Court had no jurisdiction to hear the murder offense, petitioner was not placed in jeopardy of a murder conviction, under either a malice murder or felony murder theory, in the Twiggs County proceedings.

■ Petitioner was, however, placed in jeopardy for the offense of kidnapping with bodily injury. The Double Jeopardy Clause bars a subsequent prosecution for any offense deemed the "same offense" under the test in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

The Supreme Court held in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), that a lesser or greater included offense is the "same offense" for double jeopardy purposes. It thus becomes necessary to determine whether petitioner's murder conviction was for the "same offense" as his kidnapping charge.

■ Malice murder and kidnapping with bodily injury have separate and distinct elements and require proof of different facts. Kidnapping consists of abducting another unlawfully and against his will, plus inflicting some bodily injury. Malice murder consists of killing another with malice aforethought. Thus, even if they involve the same transaction and considerably overlap each other factually, they are not the "same offense" under *Blockburger*. In addition, as found by the Georgia Supreme Court, the Georgia legislature intended multiple punishment for kidnapping and malice murder in a case such as this. *Stephens v. Hopper*, 241 Ga. at 599–600, 247 S.E.2d at 95–96.

■ As felony murder is defined under Georgia law, the underlying felony is a lesser included offense of felony murder and thus the same offense under *Blockburger*. *See Young v. State*, 238 Ga. 548, 233 S.E.2d 750 (1977); *Reed v. State*, 238 Ga. 457, 233 S.E.2d 369 (1977). Once the State tried and convicted petitioner for kidnapping, it would be barred from prosecuting him for felony murder only if the underlying felony upon which that prosecution was based were that same kidnapping. *Illinois v. Vitale*, —— U.S. ——, 100 S.Ct. 2260, 65 L.Ed.2d 228. *See Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715; *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

■ We have examined the record closely to see whether the Bleckley County murder prosecution was based in any part on a

theory of felony murder with the underlying felony being the kidnapping of Roy Asbell. The record clearly shows that petitioner was indicted, tried and convicted solely on the grounds that he committed murder with malice aforethought. The trial judge specifically instructed the jury on the requirement of malice.

> I further charge you that on the trial of a defendant for the offense of Murder the burden is on the State to prove malice, either expressed or implied, and unless the State proves malice beyond a reasonable doubt there can be no verdict of guilty of Murder, and you should acquit of that charge. For as I said, there can be no Murder without malice.

Where, as here, it is clear petitioner was tried and convicted for malice murder and that crime was not the "same offense" as the kidnapping with bodily injury for which he was convicted in the first proceeding, the Double Jeopardy Clause does not bar the malice murder conviction regardless of whether malice murder and felony murder are the "same offense" under the *Blockburger* test. Petitioner's double jeopardy argument is accordingly rejected.

## II. INCOMPLETE TRANSCRIPT

The transcript in petitioner's murder trial does not include the closing and sentencing arguments of counsel or the *voir dire* of the jury. It appears that the entire trial was recorded by the court reporter. The customary practice in that court, however, was that *voir dire* and closing arguments were not transcribed in the absence of a request by the State or the defendant. Both of petitioner's attorneys were familiar with that practice but neither they nor the State requested that those portions of the trial be transcribed. Trial counsel were also informed by the trial judge that if they had any objections to the arguments, the objectionable portion of the argument and the objection would be transcribed. No objections were made. Thus, no part of closing arguments was transcribed.

. At the time of petitioner's initial appeal to the Supreme Court of Georgia, the trial judge submitted as part of the record on appeal the detailed, seven–page questionnaire required by Ga. Code Ann. § 27–2537(a) and described in *Gregg v. Georgia*, 428 U.S. 153, 211–12, 96 S.Ct. 2909, 2942–43, 49 L.Ed.2d 859 (1976) (White, J., concurring). That questionnaire provided a comprehensive summary of the trial and a profile of the defendant.

An affidavit of the trial judge was received at the habeas corpus hearing in state court. In that affidavit the trial judge made the following statement.

> In his closing argument, [the district attorney] factually summarized the evidence in the case. He made no allusions to race nor did he use any epithet in referring to Stephens. I recall no statement by [the district attorney] that was inflammatory or that injected passion or prejudice into the trial of Stephens.

Petitioner has not alleged that anything erroneous, inflammatory or prejudicial occurred in the untranscribed portion of the trial. As he stated in his brief, there is nothing to indicate that there was anything of special importance in that part of the trial. His contention, simply stated, is that a death sentence cannot constitutionally be affirmed when the transcript before the reviewing court does not contain the proceedings of the entire trial.

Petitioner relies principally on *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1976). In *Gardner*, the defendant was convicted of first degree murder and the jury recommended a life sentence. The trial judge did not accept the advisory verdict of the jury, but instead, on the basis of a presentence report, imposed the death penalty. The confidential portion of the presentence report was shown neither to counsel nor to the defendant, and neither requested to see it. The judge did not state on the record the substance of the material contained in the report. The report was also omitted from the record on appeal. The plurality opinion of Justice Stevens, joined by two other justices, found that this procedure violated the Due Process Clause and vacated the sentence.

Gardner does not establish the per se rule that petitioner attributes to it. The decisive test is the one suggested by the plurality's statement that the procedure on appeal should be "[ ] consistent with the basis upon which the [state's] capital–sentencing procedure was upheld." *Id.* at 360 n.11, 97 S.Ct. at 1205. This Court must examine *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, to determine the basis upon which Georgia's capital–sentencing procedure was upheld and thereby identify the function the Georgia Supreme Court's review is to play in that procedure. If the record presented to the Georgia Supreme Court was so deficient that it would be impossible for that court to perform the function required of it under *Gregg,* or would create "a substantial risk" that the penalty is being inflicted in an arbitrary and capricious manner, *id.* at 188, 96 S.Ct. at 2932, petitioner's sentence cannot be permitted to stand. This analysis is especially appropriate where, as here, the case was tried and appealed before the decision in *Gregg.*

In discussing the automatic appeal of death–sentence cases to the Georgia Supreme Court, the *Gregg* plurality identified the role of that court in reviewing death sentences.

> That court is required by statute to review each sentence of death and determine whether it was imposed under the influence of passion or prejudice, whether the evidence supports the jury's finding of a statutory aggravating circumstance, and whether the sentence is disproportionate compared to those sentences imposed in similar cases.

*Id.* at 198, 96 S.Ct. at 2936.

Several considerations convince us that the record on appeal to the Georgia Supreme Court was adequate to permit that court to make the determinations required of it under *Gregg.* For the reasons set out below, we hold that *Gardner* is not controlling here and that petitioner's sentence should not be overturned on this ground. First, the report in *Gardner* was clearly the key element in the decision to impose the death penalty, for it contained "the factual basis for the judge's rejection of the advisory verdict." 430 U.S. at 362, 97 S.Ct. at 1206. Without it, it was impossible for the state supreme court to determine whether the state was "administer[ing] its capital–sentencing procedures with an even hand." *Id.* at 361, 97 S.Ct. at 1206. In this case, however, the bases for the imposition of the death penalty are set forth in the record, and the record is more than adequate to permit the state court to determine whether the death penalty was imposed with an even hand.

Second, the plurality in *Gardner* was obviously disturbed by defense counsel's lack of opportunity to comment on and object to the portion or the report not in the record, and to challenge the accuracy or materiality of the information it contained. Honest and robust debate between adversaries is essential in foreclosing the possibility, in both fact and appearance, for the intrusion of caprice, emotion, and other arbitrary influences in the truth–seeking process. In the absence of such debate, it may be difficult to achieve accuracy and avoid the appearance of arbitrariness. In the present case, all proceedings took place in open court and all counsel had a full opportunity to comment on and challenge those proceedings. The appearance of arbitrariness is thus not a factor here as it was in *Gardner.*

Third, unlike in *Gardner,* there is affirmative evidence here that the conviction and sentence were based on the evidence presented and transcribed. The State has come forward with affirmative and uncontroverted proof that in the untranscribed arguments the district attorney merely factually summarized the evidence in the case. In addition, the jurors were twice instructed to base their decision on the facts and inferences presented in the evidence. The failure of petitioner's attorneys to make any objection to the argument must also be seen as further evidence that there was no injection of anything prejudicial to petitioner and that the jury received the case solely on the basis of the evidence.

Fourth, the Georgia Supreme Court had before it in this case the detailed report of the trial judge on the defendant and the trial. At least three justices in *Gregg* felt the presence of this report was a significant factor in the state supreme court's review function.

An important aspect of the new Georgia legislative scheme, however, is its provision for appellate review. Prompt review by the Georgia Supreme Court is provided for in every case in which the death penalty is imposed. To assist it in deciding whether to sustain the death penalty, the Georgia Supreme Court is supplied, in every case, with a report from the trial judge in the form of a standard questionnaire.... The questionaire contains, *inter alia*, six questions designed to disclose whether race played a role in the case and one question asking the trial judge whether the evidence forecloses "all doubt respecting the defendant's guilt."

*Id.* at 211–12, 96 S.Ct. at 2942–43 (opinion of White, J., joined by Burger, C. J. and Rehnquist, J.). No such report was available to the state supreme court in *Gardner.*

Fifth, as noted above, petitioner has neither alleged nor offered any evidence that he was actually prejudiced by anything said in the untranscribed portion of the trial or by the failure to make the transcription. Both petitioner and one of his trial attorneys were present at the habeas corpus hearing in the Superior Court and neither suggested anything that was harmful, erroneous, inflammatory, or prejudicial. *See Clayton v. Blackburn,* 578 F.2d 117 (5th Cir. 1978).

■ The presence of these factors persuades us that the record as a whole adequately meets "the need for reliability in the determination that death is the appropriate punishment in [this] specific case," *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (opinion of Stewart, Powell and Stevens, JJ.), and that the capital–sentencing procedures have been administered with an even hand. *See Gardner v. Florida,* 430

U.S. at 361, 97 S.Ct. at 1206; *Proffitt v. Florida,* 428 U.S. 242, 250–53, 96 S.Ct. 2960, 2965–67, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell and Stevens, JJ.). The state of the record reviewed by the Georgia Supreme Court was adequate to permit it to complete the review functions required of that court under *Gregg* and to ensure that there was no substantial risk that the death sentence was arbitrarily imposed. Accordingly, we hold that in this case the failure to transcribe counsel's arguments is not a constitutional violation requiring petitioner's sentence to be vacated.

Our holding should not be construed to suggest that we condone the failure of the trial court to transcribe the entire proceedings in a death penalty case. We note that the Supreme Court of Georgia has directed that the argument of counsel should henceforth be transcribed in all cases in which the death penalty is sought. *Stephens v. Hopper,* 241 Ga. at 600, 247 S.E.2d at 95.

■ The question whether *voir dire* was properly conducted was considered by the Supreme Court of Georgia on direct appeal. *Stephens v. State,* 237 Ga. 259, 227 S.E.2d 261. That court ordered the trial record to be supplemented. From the extensive notes he made during the trial, the judge filed a five–page supplement to the record on the *voir dire* issue, and that supplement was acknowledged by counsel. The detailed supplement clearly presented to the Supreme Court of Georgia the opportunity to consider any possible error or any injection of arbitrariness. Petitioner shows no prejudice from the failure to transcribe *voir dire.*

■ The supplement also shows that the only potential juror expressing conscientious objection to the death penalty was struck by the State using one of its peremptory challenges. There is thus no *Witherspoon* issue in this appeal. *See Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

### III. IMPROPER JURY INSTRUCTION

Petitioner contends that, while the jury was instructed in the sentencing phase of

the trial that it must find at least one statutory aggravating circumstance before it could impose a death sentence, it was not instructed that even if it found such a circumstance it need not impose death.

When an appellate court reviews the adequacy of an instruction to the jury, it must view the charge as a whole. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States v. Brooks*, 611 F.2d 614, 619 (5th Cir. 1980). Only when the charge taken in its entirety fails to fairly present the issues to the jury will error be found. *United States v. Chandler*, 586 F.2d 593, 606 (5th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 483 (1979).

In his charge to the jury, the trial judge instructed them that they were to consider all the evidence of the case, including evidence of mitigation and aggravation. He told the jury that unless one of the statutory aggravating circumstances was found to be proven beyond a reasonable doubt, they would not be authorized to impose a death penalty. He then specified which aggravating circumstances they could consider. He told them that if they wished to recommend mercy, they did not have to recite any mitigating or aggravating circumstances they might find. He concluded by instructing them how to fill out the forms.

Considering the charge as a whole, it is clear that the issue was fairly presented to the jury. The clear implication of the charge that the jury could recommend mercy without stating what mitigating or aggravating circumstances they found to be present is that aggravating circumstances could be present and yet the jury could still be free to impose life imprisonment. Petitioner's contention is rejected.

## IV. AGGRAVATING CIRCUMSTANCES

The trial judge permitted the jury to consider four statutory aggravating circumstances: (1) the offense was committed by one who had escaped from lawful custody, Ga. Code Ann. § 27–2534.1(b)(9); (2) the offense was committed by one having a prior conviction for a capital felony, *id.* § 27–2534.1(b)(1); (3) the offense was committed by one having a substantial history of serious assaultive criminal convictions, *id.*; or (4) the offense was outrageously or wantonly vile, horrible or inhuman, *id.* § 27–2534.1(b)(7). The jury found the first three to be present but not the fourth.

Following trial and before petitioner's case was reviewed by the Supreme Court of Georgia, that court declared aggravating circumstance (3), commission by one having a substantial history of serious assaultive criminal convictions, to be unconstitutionally vague. *Arnold v. State*, 236 Ga. 534, 224 S.E.2d 386 (1976). After eliminating that circumstance from consideration of petitioner's appeal, the Georgia court in this case found the evidence supported the jury's findings of the other statutory aggravating circumstances and held that the sentence was not impaired. *Stephens v. State*, 237 Ga. at 261–62, 227 S.E.2d at 263.

In his state habeas corpus petition, petitioner contended that aggravating circumstance (2), commission by one having a prior conviction for a capital felony, was also invalid because he was under no such conviction at the time the crime was committed although he was admittedly under conviction for a capital felony at the time of his murder trial. The Supreme Court of Georgia interpreted the statute, Ga. Code Ann. § 27–2534.1(b)(1), as requiring that the jury should consider his record as of the time of sentencing. Accordingly, petitioner's contention was rejected. *Stephens v. Hopper*, 241 Ga. at 602–03, 247 S.E.2d at 96–97.

On appeal to this Court, petitioner argues that the presence of unconstitutional aggravating circumstance (3) before the jury and the questionable interpretation of aggravating circumstance (2) create such potential for the intrusion of arbitrary influences into his sentence as to violate his constitutional rights and require his sentence to be vacated. The Supreme Court of Georgia is the ultimate authority on the law of Georgia and we are not permitted to question its interpretation of that State's

statutes. *Tennon v. Ricketts*, 574 F.2d at 1245. We must therefore treat circumstance (2) as it is interpreted by the Georgia Supreme Court.

The question presented, then, is whether the death penalty was invalid under the Constitution because it was imposed when one of the aggravating circumstances was later held to be unconstitutional even though there were two other aggravating circumstances, either of which by itself would be legally sufficient to permit the jury to impose the death penalty and as to both of which there is no uncertainty.

In *Stromberg v. California*, 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931), the Supreme Court held that if the jury has been instructed to consider several grounds for conviction, one of which proves to be unconstitutional, and the reviewing court is thereafter unable to determine from the record whether the jury relied on the unconstitutional ground, the verdict must be set aside. *Accord, Bachellar v. Maryland*, 397 U.S. 564, 570–71, 90 S.Ct. 1312, 1315–16, 25 L.Ed.2d 570 (1970); *Street v. New York*, 394 U.S. 576, 585–88, 89 S.Ct. 1354, 1362–63, 22 L.Ed.2d 572 (1969); *Yates v. United States*, 354 U.S. 298, 311–12, 77 S.Ct. 1064, 1072–73, 1 L.Ed.2d 1356 (1957). This settled principle of law applies with particular force in cases in which the death penalty has been imposed. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), held that the death penalty may not be imposed under sentencing procedures that create a substantial risk that the penalty will be inflicted in an arbitrary and capricious manner. The Constitution requires that the sentencer's discretion be channeled by clear and objective standards that "make rationally reviewable the process for imposing a sentence of death." *Woodson v. North Carolina*, 428 U.S. at 303, 96 S.Ct. at 2990 (opinion of Stewart, Powell and Stevens, JJ.).

It is impossible for a reviewing court to determine satisfactorily that the verdict in this case was not decisively affected by an unconstitutional statutory aggravating circumstance. The jury had the authority to return a life sentence even if it found statutory aggravating circumstances. It is possible that even if the jurors believed that the other aggravating circumstances were established, they would not have recommended the death penalty but for the decision that the offense was committed by one having a substantial history of serious assaultive criminal convictions, an invalid ground. The presence of the unconstitutionally vague circumstance also made it possible for the jury to consider several prior convictions of petitioner which otherwise would not have been before it. The instruction on the invalid circumstance may have directed the jury's attention to those convictions. It cannot be determined with the degree of certainty required in capital cases that the evidence of those convictions, together with the instruction, did not make a critical difference in the jury's decision to impose the death penalty.

█ We hold that the jury's discretion here was not sufficiently channeled, *see Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and that the process in which the death penalty was imposed in this case was not "rationally reviewable." *Woodson v. North Carolina*, 428 U.S. at 303, 96 S.Ct. at 2990. *See also Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393. Petitioner's death sentence therefore cannot stand.

## V. OTHER CONSIDERATIONS

In the brief filed by amicus curiae, NAACP Legal Defense and Educational Fund, the Court's attention is invited to three additional issues: (1) whether the trial judge should have ordered a competency hearing in light of petitioner's conduct at trial; (2) whether petitioner was denied effective assistance of counsel because of counsel's inability to communicate with him; and (3) whether petitioner's uncounseled confession was knowing and voluntary, in view of allegations that it was given while appellant was under the influence of drugs. These issues may relate to petitioner's murder conviction, but they were not considered by the district court.

On remand, that court should take whatever action is appropriate with respect to those issues.

We reverse the district court's denial of habeas corpus relief insofar as it leaves standing the petitioner's death sentence, and the case is remanded for further proceedings.

REVERSED AND REMANDED.

THOMAS A. CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in the relief granted and all of the opinion except Part I which holds that there is no double jeopardy. It is my view that Stephens was placed in jeopardy for the offense of killing Asbill in Twiggs County under the holding of *Potts v. State,* 241 Ga. 67, 243 S.E.2d 510 (Ga.Sup.Ct.1978). In that case the court decided, under facts virtually identical to those in this case, that Potts could receive two death penalties, one in Cobb County for the kidnapping with bodily injury of Priest and one in Forsyth County for the murder of Priest. In refuting Stephens' double jeopardy contention, the Georgia Supreme Court relied specifically on its holding in *Potts.*[1]

If Stephens had been tried in Twiggs County he could have received the death sentence in that county as well as in Bleckley County, where he was given the death sentence which is the subject of this appeal. The only difficulty Stephens has in asserting the bar of his prior conviction to the subsequent prosecution, however, is in the venue provisions of Georgia law, which purport to vest jurisdiction for criminal homicides in the county where the cause of

death was inflicted. The majority concludes that these provisions, as construed by the Georgia courts, divested the Twiggs County court of jurisdiction over the offense for which he was later tried, and which Georgia law required to be tried only in Bleckley County. I do not agree.

It is clear that Stephens could have received the death penalty in Twiggs County for the offense to which he there plead guilty, the kidnapping–with–bodily–injury–resulting–in–death of Roy Asbill. *Potts, supra,* says so. It is equally clear that Stephens could not have received the death penalty for any offense, however Georgia defines that offense and wherever Georgia requires that offense to be tried, absent proof that the victim was killed in the commission of the crime. As I understand Georgia law, that state does not now impose the death penalty for any offense not resulting in the death of the victim.[2] Since Georgia law does not recognize any jurisdictional limitations on a court's power to punish as *homicide* a crime Georgia law does not call homicide, I do not feel any similar limitation on my duty to inquire whether the offenses are, within the meaning of the Constitution, the "same offense."

If Stephens could have received the death penalty under his Twiggs County indictment, as *Potts* clearly held that he could, it could only have been upon proof of the killing of the victim. Likewise, his subsequent prosecution for murder, under any theory of either malice or felony murder, would require proof that the victim was killed.[3] That death, by whatever name

1. *Stephens v. Hopper,* 241 Ga. 596, 247 S.E.2d 92, at 95 (1978).

2. *Stanley v. State,* 240 Ga. 341, 241 S.E.2d 173, 179–80 (1977). If a death penalty in Twiggs County could be said to be based solely on kidnapping with bodily injury not resulting in death, I think the penalty, as affirmed in *Potts,* would be unconstitutional under *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), and *Eberheart v. Georgia,* 433 U.S. 917, 97 S.Ct. 2994, 53 L.Ed.2d 1104 (1977), the latter of which set aside a death penalty for kidnapping with bodily injury as cruel and unusual punishment. A reading of the lower court

opinion in *Eberheart,* 232 Ga. 247, 206 S.E.2d 12 (1974), does not make clear that he was charged with kidnapping with bodily injury, although there was a kidnapping and bodily injury. However, Justice Undercofler wrote the lower court opinion in *Eberheart* as well as the opinion in *Collins v. State,* 239 Ga. 400, 236 S.E.2d 759 (1977), where at 761, in referring to *Eberheart,* he recited that that earlier case had involved: "two death sentences for rape and kidnapping with bodily injury.".

3. In this respect it is immaterial that Stephens received only a life sentence for that part of the kidnapping that occurred in Twiggs County, a

called, is the greater, greatest, and ultimate offense. And that single offense cannot be the basis for several offenses that would permit the state to seek a separate death penalty for malice murder, felony murder, kidnapping with bodily injury murder, *ad infinitum*. Such reasoning tortures the meaning of "same offense" and the intent of forbidding the placing of a person twice in jeopardy for that same offense.

See also, 5th Cir. 631 F.2d 413.

punishment that might constitutionally attach to what happened in Twiggs County, taking no account of the killing that followed in Bleckley County. *See* note 2, supra. The fact remains that it was within the power of the Twiggs County court to punish for the Bleckley killing, with a sanction reserved exclusively for killing. Jeopardy had attached, therefore, for the Bleckley County homicide when Stephens was brought to answer for that act in Twiggs County. The state needn't have more than one opportunity to punish for that killing, and the double jeopardy guaranty should prevent it.