**Ernest John DOBBERT,
Petitioner-Appellant,**

v.

**Charles G. STRICKLAND, Jr., et al.,
Respondents-Appellees.**

No. 82–5121.

United States Court of Appeals,
Eleventh Circuit.

Oct. 19, 1983.

Rehearing and Rehearing En Banc
Denied Nov. 21, 1983.

See also, 11 Cir., 670 F.2d 938.

Patrick D. Doherty, Gross & Doherty, Clearwater, Fla., for petitioner-appellant.

Carolyn Snurkowski, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before RONEY and TJOFLAT, Circuit Judges, and WISDOM *, Senior Circuit Judge.

PER CURIAM:

This is an appeal by a Florida state prisoner from a federal district court's denial of habeas corpus relief in a capital case. Petitioner Ernest John Dobbert was convicted of first degree murder of his daughter. Contrary to the recommendation of the advisory sentencing jury, the trial judge sentenced him to death. In the precise words used in his petition for a writ of habeas corpus, Dobbert asserted the following grounds in the federal district court:

1. insufficiency of the evidence;
2. refusal to consider relevant mitigating circumstances;
3. striking aggravating circumstances;
4. refusal to instruct jury on a lesser included offense;
5. the Supreme Court of Florida's improper ex parte consideration of extra-record materials;
6. systematic exclusion of death-scrupled jurors;
7. improper overriding of jury's verdict of life imprisonment;
8. unconstitutionality of trial court overriding jury verdict of life and imposing a sentence of death;
9. improper restriction of mitigating circumstances;
10. refusal to sever counts;
11. improperly admitted prejudicial evidence;
12. improper closing argument;
13. unconstitutional aggravating evidence.

Petition for Writ of Habeas Corpus, *Dobbert v. Strickland*, 532 F.Supp. 545 (M.D. Fla.1982).

Paraphrased as follows, petitioner asserts seven claims on appeal:

1. The Florida Supreme Court's solicitation and collection of psychiatric, psycholog-

ical and correctional reports concerning petitioner and other death row inmates during the pendency of their capital appeals violated the rights to due process, effective assistance of counsel, confrontation, and the prohibitions against cruel and unusual punishment and self-incrimination under the Fifth, Sixth, Eighth and Fourteenth Amendments (the so-called *Brown* issue);

2. The Florida Supreme Court's affirmance of the death sentence after ruling two of the four aggravating circumstances found by the state trial court inapplicable violated the Eighth and Fourteenth Amendments;

3. A. Imposition of the death sentence after the jury's recommendation of life violated the integrity of the jury trial, due process, and the prohibitions against double jeopardy and cruel and unusual punishment;

B. The procedure by which the jury recommendation was overridden violated due process and the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendments;

4. The Florida courts refused to give independent weight to mitigating evidence in violation of the Eighth and Fourteenth Amendments;

5. The prosecutor's use of peremptory challenges to remove death-scrupled jurors from the panel was a deprivation of due process and violated the right to have a jury composed of a fair cross-section of the community under the Sixth and the Fourteenth Amendments;

6. The evidence at trial was insufficient to prove beyond a reasonable doubt the element of premeditation required for conviction of murder in the first degree.

Our recent en banc opinion in *Ford v. Strickland*, 696 F.2d 804 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), settled appellate issue one adversely to petitioner. *Ford* and the recent Supreme Court decision in *Barclay v.*

---

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

tion.

*Florida,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), control the decision as to issue two. Because the remaining contentions fail to present errors of constitutional magnitude, we affirm.

## Background

In the spring of 1974, Dobbert was convicted in Circuit Court, Duval County, Florida, of the first degree murder of his nine-year-old daughter, second-degree murder of his seven-year-old son, child torture of his eleven-year-old son, and child abuse of his five-year-old daughter. Only the first degree murder conviction and sentence are challenged in the instant appeal.

Petitioner's conviction and sentence were affirmed by the Florida Supreme Court. *Dobbert v. State,* 328 So.2d 433 (Fla.1976). The United States Supreme Court granted certiorari on three issues not involved in the instant appeal and decided them all against Dobbert. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Under the authority of *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Supreme Court of Florida entered an order which vacated petitioner's death sentence and remanded the case to the trial judge for resentencing. The trial judge resentenced Dobbert to death, the Florida Supreme Court affirmed the new sentence, *Dobbert v. State,* 375 So.2d 1069 (Fla.1979), and the United States Supreme Court denied certiorari. *Dobbert v. Florida,* 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

Petitioner joined with 122 other death row inmates in a state habeas corpus petition challenging the Florida Supreme Court's alleged practice of receiving nonrecord information during the pendency of the appeals of capital cases. The Florida Supreme Court dismissed the petition with an extensive opinion. *Brown v. Wainwright,* 392 So.2d 1327 (Fla.1981). The denial of certiorari by the United States Supreme Court fostered a dissenting opinion. *Brown v. Wainwright,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). Dobbert thereafter mounted another collateral attack pursuant to Florida Rule of Criminal Procedure 3.850. Denial of relief was affirmed by the Su-

preme Court of Florida on January 28, 1982. *Dobbert v. State,* 409 So.2d 1053 (Fla.1982).

Scheduled for electrocution on February 2, 1982, petitioner filed the petition for writ of habeas corpus that is the basis of the instant appeal on January 27, 1982. The federal district court denied relief, and we granted a stay of execution by order, followed by an opinion. *Dobbert v. Strickland,* 670 F.2d 938 (11th Cir.1982).

### 1.

## The Brown Issue

Lacking specific evidence that such materials were reviewed in his case, Dobbert attacks the Florida Supreme Court's alleged practice of receiving nonrecord materials concerning death row inmates during the pendency of their appeals. Our recent en banc decision in *Ford v. Strickland,* 696 F.2d at 809–11, considered and rejected this identical claim.

### 2.

## Insufficiency of Evidence on Two Aggravating Circumstances

Under the Florida procedure by which a jury renders an advisory verdict as to sentence in a capital case, Dobbert's jury recommended life imprisonment. The trial court, however, sentenced Dobbert to death, finding evidentiary support for four statutory aggravating circumstances. On appeal, the Supreme Court of Florida ruled there was insufficient evidence to support two of the four circumstances: that Dobbert was under sentence of imprisonment when he committed the murder and that he created a great risk of death to many persons. *Dobbert v. State,* 375 So.2d at 1070. The court upheld the remaining two aggravating circumstances, specifically finding "the murder was committed to avoid lawful arrest and was especially heinous and cruel." *Id.*

At the time this case was submitted, petitioner argued that where the trial court relied on two aggravating circumstances for which there was insufficient evidentiary support, the Florida Supreme Court's affirmance of his death sentence was unconstitutional under *Henry v. Wainwright,* 661

F.2d 56 (5th Cir.1981) and *Stephens v. Zant,* 631 F.2d 397 (5th Cir.1980). *Stephens* has now been reversed by the Supreme Court, *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), and *Henry* has been vacated. *Wainwright v. Henry,* —— U.S. ——, 103 S.Ct. 3566, 77 L.Ed.2d 1407 (1983).

Prior to the recent Supreme Court decisions, this Court had rejected this same basic contention in an en banc opinion, *Ford v. Strickland,* 696 F.2d at 1261–63, which held our decisions in *Stephens* and *Henry* inapplicable to a situation such as this reasoning:

> In any event, we think that *Stephens* and *Henry* are inapposite to the case at bar. This case involves consideration of neither unconstitutional nor nonstatutory aggravating evidence. That the evidence was insufficient to support two circumstances and one circumstance was based on the same aspect of the crime as another does not suggest that the sentencing court considered any extraneous or improper evidence. The sentencing jury and judge considered only evidence of facts which could properly be considered by them. This case is appreciably different from *Stephens* because there the jury may have considered evidence that it could not constitutionally consider. In this case, no evidence considered was inappropriate for consideration. The sentencing judge's erroneous classification of that evidence as the aggravating circumstances permitted by statute should not constitutionally infect the sentence. On all of the evidence before him, he reached the determination that the death sentence was appropriate.

In *Ford,* we upheld against constitutional attack a death sentence even though the trial judge relied on two aggravating circumstances without evidentiary support and one aggravating circumstance based on the same aspect of the crime as another, properly considered an aggravating circumstance.

The United States Supreme Court has also now rejected a similar contention in *Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). In *Barclay,*

the Court upheld a death sentence even though the sentencing judge considered a nonstatutory aggravating circumstance in violation of state law. Thus, as in the present case, the trial judge relied on an invalid aggravating circumstance. In affirming the death sentence, the United States Supreme Court reasoned that the Florida Supreme Court could determine the improper aggravating circumstance did not affect the trial judge's decision since there were other proper aggravating circumstances. *Id.* at —— – ——, 103 S.Ct. at 3427–28. *See also Zant v. Stephens,* —— U.S. ——, —— – ——, 103 S.Ct. 2733, 2749–50, 77 L.Ed.2d 235, 257–59 (1983).

■ As in *Barclay* and *Ford,* the sentencing judge here found no mitigating circumstances and some appropriate statutory aggravating circumstances. The judge did not view as aggravating any constitutionally protected conduct. The Florida Supreme Court then followed what seems to be its consistent practice in cases of this kind: to affirm the death sentence if justified under a review of all the evidence and one or more validly found aggravating circumstances are present, even though one or more statutory grounds are not sufficiently shown. *Dobbert v. State,* 375 So.2d at 1071. As in *Barclay,* the Florida Supreme Court reviewed the sentence under the heightened standard of *Tedder v. State,* 322 So.2d 908 (Fla.1975), because the jury recommended life, concluding "the facts suggesting the death sentence are so clear and convincing that virtually no reasonable person could differ." *Dobbert v. State,* 375 So.2d at 1071.

Thus, the trial court's imposition of the death sentence and the Florida Supreme Court's affirmance thereof were not arbitrary. The Florida courts satisfied the constitutional requirement by making an "*individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Barclay,* —— U.S. at ——, 103 S.Ct. at 3428, *quoting Zant v. Stephens,* —— U.S. ——, ——, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235, 251 (1983) (emphasis in original).

### 3.

*Imposition of the Death Sentence Following an Advisory Jury Verdict Recommending Life Imprisonment*

In his third and fourth claims on appeal, Dobbert contends the trial judge's imposition of a death sentence following the jury's advisory life verdict is unconstitutional *per se* under *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), and procedurally unconstitutional under *Tedder v. State,* 322 So.2d 908 (Fla.1975).

### A.

*Bullington* is inapposite because in Missouri, the jury's sentencing decision is controlling. In that case, the defendant was convicted of capital murder and sentenced by the jury to life imprisonment. After a new trial, the second jury sentenced him to death. The Supreme Court held the Fifth Amendment's double jeopardy clause precluded imposition of a more severe sentence on retrial, analogizing the jury's sentencing function to its role in determining guilt or innocence.

■ Under the Florida statute, however, the sentencing jury's verdict is merely advisory and not binding on the trial judge. The Supreme Court's approval of Florida's capital sentencing procedure, including the provision for judge sentencing preceded by jury recommendation, defuses by implication any charge that the failure of the sentencing judge to follow the jury's recommendation is unconstitutional. *See Proffitt v. Florida,* 428 U.S. 242, 252, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976); *Dobbert v. Florida,* 432 U.S. 282, 294–97, 97 S.Ct. 2290, 2298–2300, 53 L.Ed.2d 344 (1977). Indeed, as Dobbert concedes, it is an open question whether jury participation in the penalty phase of a capital case is constitutionally required at all. *Lockett v. Ohio,* 438 U.S. 586, 609 n. 16, 98 S.Ct. 2954, 2967 n. 16, 57 L.Ed.2d 973 (1978); *Proffitt v. Florida,* 428 U.S. at 252, 96 S.Ct. at 2966.

### B.

Pursuing a slightly different angle, petitioner claims that even though the system is constitutional, the procedures by which the death penalty was imposed in his case were unconstitutional. He relies on *Tedder v. State,* which holds a death sentence imposed after an advisory jury life verdict can be sustained only if supported by facts so "clear and convincing that no reasonable person could differ." 322 So.2d at 910.

When distilled, Dobbert's argument is both an extension of his position that the non-binding status of the jury's recommendation is unconstitutional *per se* coupled with an attack on the sufficiency of the evidence under *Tedder.* As to the former, this feature of the Florida capital sentencing statute is constitutional. *See Proffitt v. Florida,* 428 U.S. at 252, 96 S.Ct. at 2966. As to the latter, we have already held in Part 2, *supra,* that the fact that there was a lack of evidentiary support for two of the four aggravating circumstances relied on by the trial court does not render petitioner's sentence constitutionally infirm. *Ford v. Strickland,* 696 F.2d at 1259–61. We hold hereafter that mitigating evidence was not unconstitutionally restricted, *see* Part 4, *infra.* Review of the record under the *Tedder* standard reveals sufficient support for the ultimate conclusions of the state trial judge's detailed findings, the two opinions of the Florida Supreme Court and the United States Supreme Court's decision to defeat a constitutional attack on the death sentence as procedurally deficient.

### 4.

*Weight Accorded Mitigating Evidence*

Petitioner argues that although he was allowed to present such mitigating evidence as he desired in his sentencing hearing, the trial court violated *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma,* 455 U.S. 104, 116, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982), by failing to give independent weight to evidence of his emotional disturbance and other nonstatutory mitigating circumstances.

■ This argument fails because our analysis of the record reveals that both the order of the trial court and the decision of the Florida Supreme Court reflect consideration of all mitigating evidence put on by Dobbert, statutory and nonstatutory. *Dob-*

bert v. State, 375 So.2d at 1071. The identical concluding phrase employed by the trial court, "[t]here are no mitigating circumstances existing—either statutory or otherwise—which outweigh any aggravating circumstances" has been held indicative of the sentencing judge's consideration of nonstatutory mitigating evidence. *Ford v. Strickland,* 696 F.2d at 813. Petitioner's suggestion that this rationale compels the conclusion that non-statutory aggravating circumstances were also considered is unavailing because the above phrase was not used in connection with the trial court's discussion of aggravating circumstances. The fact that the sentencing order does not refer to the specific types of non-statutory "mitigating" evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered. Whether particular evidence, such as the fact that Dobbert had a difficult childhood, is mitigating depends on the evidence in the case as a whole and the views of the sentencing and reviewing judges. What one person may view as mitigating, another may not. Merely because the Florida courts, operating through a properly drawn statute with appropriate standards to guide discretion, do not share petitioner's view of the evidence reveals no constitutional infirmity. *See Proffitt v. Florida,* 428 U.S. at 258–59, 96 S.Ct. at 2969–70.

### 5.
### Use of Peremptory Challenges to Exclude Death-Scrupled Jurors

Petitioner claims the state used peremptory challenges at his trial to systematically exclude death-scrupled jurors from his panel in violation of his rights to due process and to a fair and impartial jury drawn from a cross-section of the community under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Although it also rejected this contention on the merits, the district court held first under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that this point is foreclosed from consideration in the federal forum due to

Dobbert's failure to object at trial to the prosecutor's use of peremptory challenges. The Florida Supreme Court has recently reaffirmed the applicability of the waiver-by-failure-to-object rule to challenges to the composition of the jury panel. *Maggard v. State,* 399 So.2d 973, 975 (Fla.1981), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981).

■ The applicability of *Sykes'* procedural default rule to the instant facts is not entirely clear because the Florida Supreme Court, in affirming the denial of relief to petitioner in a collateral attack under Fla.R. Crim.P. 3.850, both applied the rule *and* reached the merits. *Dobbert v. State,* 409 So.2d 1053 (Fla.1982). The trial court had previously denied the motion, also through an alternative ruling. A procedural default bars the consideration of the merits of an issue in federal court only when the state court itself applies the procedural default rule. *See Ulster County Court v. Allen,* 442 U.S. 140, 152, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979). Where the state court waives the procedural requirement and decides the case on the merits, federal review of the constitutional claim is not barred. *Rogers v. McMullen,* 673 F.2d 1185, 1188 (11th Cir. 1982).

■ Where the state court decision relies on both a procedural default and a lack of merit, the situation is unclear. One federal district court has held in a habeas corpus case that it was required to conduct a review on the merits under such circumstances. *Darden v. Wainwright,* 513 F.Supp. 947, 952 (M.D.Fla.1981). We have held, however, that where a state court clearly and correctly applies a procedural default rule, *Sykes* requires the federal court to abide by the state court's decision even though the state court discusses the merits as an alternate ground for rejecting a claim. *Ratcliff v. Estelle,* 597 F.2d 474, 478 (5th Cir.), *cert. denied* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). Appellate courts often decide an issue in the alternative with no intention of abandoning any available ground for decision. The problem here, however, is discerning whether the

waiver rule has been applied and the merits discussed only in the alternative, or whether the procedural ground is mentioned only in passing and the merits form the basis of the state court's decision. In this case, for example, the Florida Supreme Court first discusses the merits, then states, "Furthermore, we find that Dobbert has waived any right to challenge the jury based on the rationale of *Witherspoon* by his failure to object to the State's peremptory challenges to the jury panel." *Dobbert v. State,* 409 So.2d at 1057.

This approach by the state court might well give the federal court the option to refuse to review the merits of the issue because of a state court procedural default. Just as the federal district and state courts decided both issues, however, we examine them both on appeal.

■■ Assuming applicability of the procedural default rule, petitioner argues that *Sykes'* cause and prejudice exception applies because it is "not at all clear that violations of *Witherspoon* are waivable" and because evidence of the pattern and practice was not available until after trial. These arguments fail for two reasons. *First, Witherspoon* dealt with the standard for dismissing jurors for *cause* based on their beliefs concerning the death penalty and not the systematic exclusion of jurors based on race through peremptory challenges addressed in *Swain*. Petitioner's novel attack on the state's use of peremptory challenges to exclude death-scrupled jurors rests on a synthesis of *Witherspoon* and *Swain,* and does not present a true *Witherspoon* claim so that the waivability of a pure *Witherspoon* claim is not properly before us. In any event, we have repeatedly held the contemporaneous objection rule constitutional with regard to challenges of the composition of jury panels, *Huffman v. Wainwright,* 651 F.2d 347, 349 (5th Cir. 1981), and Dobbert has presented no authority which stands for the proposition that *Sykes'* procedural default rule is inoperable in the *Witherspoon* context. *Second,* although the research study on which petitioner's claim is founded was completed after his trial, both *Witherspoon* and *Swain* were decided years before. It therefore

cannot be said Dobbert lacked the tools to construct the instant constitutional claim at the time of trial. *Engle v. Isaac,* 456 U.S. 107, 129–34, 102 S.Ct. 1558, 1572–74, 71 L.Ed.2d 783 (1982).

■ An examination of the merits reveals no constitutional error. We agree with the district court that *Witherspoon* and *Swain,* which address respectively the use of challenges for cause to exclude death-scrupled jurors and the use of peremptory challenges to exclude black jurors, have not been extended to the instant situation and are inapplicable. Dobbert's *Witherspoon/Swain* claim is therefore rejected on both procedural and substantive grounds.

### 6.
### *Sufficiency of the Evidence*

■ Petitioner alleges there was insufficient evidence to prove the element of premeditation to sustain his conviction for first degree murder. The district court opinion carefully and correctly applies *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and like the Florida Supreme Court, *Dobbert v. State,* 328 So.2d 433 (Fla.1976), *aff'd,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), concludes there was ample evidence to permit a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. There is no merit to this challenge to petitioner's conviction.

AFFIRMED.

WISDOM, Senior Circuit Judge, dissenting.

I respectfully dissent. When the state exacts death as the punishment for a crime, it must follow meticulously the procedures designed to safeguard against even a slight risk of improper imposition of this uniquely irreversible sentence.

The reversible error is that the prisoner's file, subject to review by the Florida Supreme Court, included nonrecord evidence. In the majority opinion it is characterized as "The Brown Issue". *See Brown v. Wain-*

*wright,* Fla.1981, 392 So.2d 1327, *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407. In *Brown* the petitioner and other Florida death row inmates joined in asking habeas relief on the ground that the Florida Supreme Court "engaged in the continuing practice of requesting and receiving information concerning capital appellants which was not presented at trial and not a part of the trial record or record on appeal". That information includes presentence investigations, psychiatric evaluations and contact notes made in the corrections system after conviction, and psychological screening reports made after conviction by corrections personnel. *Id.* at 1330. The court did not deny the existence of the practice, but stated: "Factors or information outside the record play no part in our sentence review role." *Id.* at 1332. Moreover, "the reading of non-record documents would [not] so affect members of this Court that they could not properly perform their assigned appellate functions". *Id.*

The majority perfunctorily dismisses the Brown issue: "Our recent en banc decision in *Ford v. Strickland,* [11 Cir.1983, 696 F.2d 804], considered and rejected this identical claim."

*Ford* is bad law[1] and flabby authority to treat as a binding precedent. The Court of Appeals for the Eleventh Circuit should reexamine its position on the issue raised in that case and raised again in this case. Stare decisis is not so powerful a doctrine that it should overcome justice and perpetuate error. Stare decisis is useful in providing stability and predictability in the law, particularly in the field of commercial law, but it is far less useful in constitutional law. The United States Supreme Court is dedicated to the thesis that "when convinced of former error, this Court has never felt constrained to follow precedent". *Smith v. Allwright,* 1944, 321 U.S. 649, 665, 64 S.Ct. 757, 765, 88 L.Ed. 987. Here there is no

long line of cases establishing precedent. There are just the enigmatic opinion in *Ford* and the impenetrable opinion in *Brown.* This Court should correct its error before it is snared by a net of its own making.

The irrelevancies in this case are not the nonrecord files the Florida Supreme Court has made a practice of requesting in death cases. They are an over-tender respect for the sensibilities of that court and a fear that too many prisoners in death row cells in Florida will have to be resentenced. But when the stakes are life and death for at least 123 men on death row,[2] "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and *appear* to be, based on reason. . . ." *Gardner v. Florida,* 1977, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (plurality opinion) (emphasis added).

In *Gardner v. Florida,* the Supreme Court reversed a death sentence because a portion but not all of the presentence report had been disclosed to the defendant's counsel and, on the basis of the report, the district judge had rejected the jury's advisory verdict and sentenced the defendant to death. The plurality opinion in *Gardner* found that the sentencing procedure violated the due process clause of the fourteenth amendment. Notwithstanding the holding in *Gardner,* the Florida Supreme Court conceded in *Brown* that it followed the practice in capital cases of requesting nonrecord psychiatric, psychological, and post-sentence reports on petitioners. These reports were not shown nor were their contents made known to the petitioners or their attorneys.

As Chief Judge Godbold said in his dissenting opinion in *Ford:* "The rationale, if not the narrow holding of *Gardner v. Florida,* . . . prohibits an appellate court from relying on, that is, using as a factor in its

---

1. I was not a member of the *Ford* panel and therefore could not express my disagreement with the holding of the en banc Court of Appeals for the Eleventh Circuit.

2. One hundred twenty-two death row inmates joined with Joseph Brown in the petition challenging the Florida court's practice. *Brown v. Wainwright,* Fla.1981, 392 So.2d 1327, *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407. The broad principle stated in *Ford* could apply to all of them.

decision, nonrecord information." 696 F.2d at 820. It is unclear whether the Florida Supreme Court has violated this principle. "The disparate views that the judges of this court have expressed about the import of *Brown* convincingly demonstrate the intractable ambiguity of the Florida Supreme Court's opinion." *Id.* at 821. According to the *Ford* majority, the Florida Supreme Court indicated in *Brown* that it did not use the extrinsic material. 696 F.2d at 804. Judge Godbold read *Brown* "differently". He construed the opinion as "not directly stat[ing] that it did not actually rely on nonrecord information". *Id.* at 821. Judge Johnson, also dissenting, found that "[t]he Florida Supreme Court has admitted the practice [of considering nonrecord information] but has attempted to justify its actions by drawing a fine distinction between capital sentence 'review' as defined by state law and constitutionally required 'supervisory standards' imposed by the United States Supreme Court." *Id.* at 872. Judge Kravitch, dissenting from the panel opinion, pointed out:

> The Florida court did not deny that it systematically requested and received nonrecord information concerning capital defendants, *see Brown v. Wainwright,* 392 So.2d at 1330, 1331; moreover it essentially admitted having used the information for *some* purpose by its statement that "[t]he 'tainted' information we are charged with reviewing was . . . in every instance obtained to deal with newly-articulated procedural standards". *Id.* at 1333 n. 17. . . .

The mystery that the Florida Supreme Court has chosen to leave unresolved concerning the purpose of its requests for and its use of nonrecord information only underscores the need for a complete factual record in this case.

*Ford v. Strickland,* 11 Cir.1982, 676 F.2d 434, 455.

Only blind faith can support a conclusion that there was no appearance of impropriety, for its stretches credulity past the breaking point to hold, as the majority effectively holds in this case, that the Florida Supreme Court consistently and secretly sought information that it intended not to use and that was, according to the court, "irrelevant". For the reasons eloquently and lucidly explained in the dissenting opinions in *Ford,*[3] I would hold that the Florida Supreme Court's practice of receiving nonrecord information must be held to violate the due process clause of the fourteenth amendment.

I agree with Judge Johnson's suggested remedy:

> [T]he only way to remedy this violation would be to direct the district court to grant the writ conditionally. The writ would become final in the event that the Florida Supreme Court does not grant petitioner a new direct review of his conviction and sentence. Either the new review must be undertaken completely without the benefit of nonrecord material, or, if the court decides to continue its practice, the new review must give petitioner and his counsel adequate notice of the use of nonrecord information, with adequate opportunity to comment on and challenge the material.

*Ford v. Strickland,* 696 F.2d at 874.

---

**3.** *See also Brown v. Wainwright,* 1981, 454 U.S. 1000, 1001, 102 S.Ct. 542, 543, 70 L.Ed.2d 407 (Marshall, J., dissenting from denial of certiorari). Justice Marshall pointedly asks: "If the Court does not use the disputed nonrecord information in performing its appellate function, why has it systematically sought the information?" Justice Marshall's opinion further notes that the practice of the Florida Supreme Court may also have resulted in violations of *Estelle v. Smith,* 1981, 451 U.S. 454, 101 S.Ct. 1866, 68

L.Ed.2d 359. I agree. In *Smith,* the Court held that the results of an in-custody psychiatric examination could not be used in the penalty phase of a trial for a capital crime when the defendant was neither given *Miranda* warnings before the examination nor permitted the assistance of counsel in deciding whether to undergo the examination. Dobbert apparently had neither warnings nor assistance of counsel in deciding to undergo the interviews that he contends the supreme court considered.